**DEPOSITION OF AMY BERNARD**

MINIDEP by Kenson

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

SWATCH S.A.,

Opposer,  Opposition No.: 91169312

v.

Mark: SWAP

AMY T. BERNARD and
BEEHIVE WHOLESALE LLC,  Serial No.: 78/459527

Applicant.

ORAL DEPOSITION OF AMY BERNARD

October 14, 2009

207 West Carolina Avenue

Ruston, Louisiana

Reported by Sara Jo Hood, CCR

State of Louisiana

INDEX
ORAL DEPOSITION OF AMY BERNARD
Taken October 14, 2009

|  | PAGE |
|---|---|
| Exhibit Index | 3 |
| Stipulations | 5 |
| Direct Examination by Mr. Utermohlen | 7 |
| Cross-Examination by Mr. Gulick | 11 |
| Signature | 16 |
| Reporter's Certificate | 17 |

- 3 -

APPEARANCES:

FOR THE APPLICANT:

WILLIAM J. UTERMOHLEN, ESQ.
Oliff & Berridge, PLC
277 South Washington Street, Suite 500
Alexandria, Virginia 22314

FOR THE OPPOSER:

THOMAS P. GULICK, ESQ.
Collen IP
The Holyoke-Manhattan Building
80 South Highland Avenue
Ossining-on-Hudson, Westchester County
NEW YORK 10562

ALSO PRESENT:

Mr. Brent Bernard

REPORTED BY:

Sara Jo Hood
Certified Court Reporter
Certificate No. 87336
State of Louisiana
100 West Texas Avenue, Third Floor
Ruston, Louisiana 71270
(318) 255-4691

- 2 -

EXHIBIT INDEX
ORAL DEPOSITION OF AMY BERNARD
Taken October 14, 2009

| EXHIBIT | INITIAL REFERENCE |
|---|---|
| 17 Copy of notes from brainstorming session | 8 |

- 4 -

**Sara Jo Hood**
Certified Court Reporter
State of Louisiana
318 927-4771

Defendant's Exhibit 36

**DEPOSITION OF AMY BERNARD**

MINIDEP by Kenson

The deposition, upon oral examination, of AMY BERNARD, being taken by counsel for applicant pursuant to notice and agreement of counsel as authorized by 37 C.F.R. Section 2.123 and the Federal Rules of Civil Procedure before Sara Jo Hood, Certified Court Reporter, State of Louisiana, beginning at 8:15 a.m., on the 14th day of October, 2009, at the Law Offices of Raymond Madden, III, 207 West Carolina Avenue, Ruston, Louisiana 71270; it being agreed and stipulated by and between counsel that all formalities, with the exception of swearing the witness and the reading and signing of the deposition, are waived; that the notarization of deponent's signature is waived; that objections shall be stated on the record.

- 5 -

**Sara Jo Hood**
Certified Court Reporter
State of Louisiana
318 927-4771

**DEPOSITION OF AMY BERNARD**

PROCEEDINGS

MR. GULICK:
Before we begin, can we just put on the record who is here in the room?

MR. UTERMOHLEN:
Sure.

MR. GULICK:
We'll let the record reflect the deponent, Amy —

MR. UTERMOHLEN:
I'm William Utermohlen, counsel for the applicant. Next to me is Brent Bernard, corporate representative for Beehive Wholesale.

MR. GULICK:
My name is Tom Gulick. I'm counsel for the opposer in this case. We're going to object insofar as the presence of Mr. Bernard as a corporate representative, and just with a brief instruction that, obviously, he's not to talk to anyone about the testimony that is taking place in this room.

MR. UTERMOHLEN:
I'm not sure I understand your objection. What's the grounds for it again?

MR. GULICK:

- 6 -

In other words, he's not to speak to the witness or you during the course of the taking of the testimony itself.

MR. UTERMOHLEN:
So your objection is that you don't want him consulting with either me or the witness —

MR. GULICK:
During the testimony.

MR. UTERMOHLEN:
During Amy Bernard's deposition?

MR. GULICK:
Testimony, yes.

MR. UTERMOHLEN:
All right. I understand the objection.

AMY BERNARD
having been first duly sworn, was examined and testified as follows:

DIRECT EXAMINATION
BY MR. UTERMOHLEN:
Q. Ms. Bernard, could you state your name for the record, please?
A. Amy Bernard.
Q. And where are you employed, Ms. Bernard?
A. Beehive.
Q. That's Beehive Wholesale, LLC?

- 7 -

A. Yes.
Q. And what's your position there?
A. My position as owner is product development and guiding the company overall product, product development and design.
Q. And you were deposed in this case earlier? You recall that?
A. Yes.
Q. When did Beehive first introduce the Swap product line?
A. It was around June 2003.
Q. Had the name "Swap" been chosen by that time?
A. Yes. Yes, it had.
Q. How was the name "Swap" chosen?
A. As all of our product lines, we do a brainstorming session where we just throw out a list of ideas and then we all talk about it and think about what would be the best name for a product line and then we decide.

MR. UTERMOHLEN:
Madam Court Reporter, if you could initial that version.

MR. UTERMOHLEN:
Q. Ms. Bernard, let me show you what's been marked as Exhibit 17. Do you recognize that document?
A. Yes.

- 8 -

Q. What is it?
A. It's a piece of paper where we did a brainstorming session and tried to come up with names for our new product line.
Q. And which of these names were potential, or let me restate that. Which of these words were potential names for the product line?
A. Pretty much all of them. They were all considered. We wrote down just a list of what we were thinking about. Most of them on there are potential names, with the exception of "watch" or "beads," you know, from just brainstorming.
Q. So "Sir Mix a Lot" was one?
A. Yes.
Q. And "Switch" was another?
A. Yes.
Q. "Mix Match"?
A. Yes.
Q. "Mix Max" as well?
A. Yes.
Q. Did all those names suggest interchangeability?

MR. GULICK:
Objection, foundation.

A. Yes, they did.

MR. UTERMOHLEN:

- 9 -

**DEPOSITION OF AMY BERNARD**

MINIDEP by Kenson

1 Q. And is that what you thought at the time?
2 A. Yes.
3 Q. Of those names, why was Swap chosen?
4 A. Out of the names we came up with, Swap was the
5 shortest, number one. It was the easiest to remember,
6 and it was catchy.
7 Q. I want to change to another topic now. To your
8 knowledge, do any of the purchasers of Swap products
9 resell those products?
10 A. Yes. I have seen our products resold.
11 Q. In what context?
12 A. Under the Swap brand.
13 Q. Where have you seen them resold?
14 A. Ebay, various Internet outlets.
15 Q. And are they labeled in any way or under what name?
16 A. Yeah. They usually put "Swap Watch."
17 Q. And I've got one other topic, and that's the Swatch
18 Company that's the opposer in this case.
19 A. Uh-huh.
20 Q. Think you testified at your first deposition that
21 you first heard of Swatch as a teenager? Is that
22 right?
23 A. Correct.
24     MR. GULICK:
25     Objection, leading.
- 10 -

1 MR. UTERMOHLEN:
2 Q. When did you first hear of Swatch?
3 A. I think it was probably about my seventh-grade
4 year. Yeah, as a 12-year-old, I guess.
5 Q. Approximately when was that?
6 A. Well, let me think. Probably 80. Yeah, 1980.
7 Q. And after that time, did you encounter Swatch
8 before this opposition was begun?
9 A. No.
10     MR. UTERMOHLEN:
11     Okay. I don't have any other questions at
12 this time.
13                CROSS-EXAMINATION
14 BY MR. GULICK:
15 Q. You just mentioned that Swap brand products were
16 resold in other, I guess, market channel, markets of
17 trade, correct?
18 A. Yes.
19 Q. And one of those would be the Internet, correct?
20 A. Yes.
21 Q. Ebay would be one of the sites that had some of the
22 watches --
23 A. Correct.
24 Q. It's also true that you sell them in your retail
25 store locations, correct?
- 11 -

1 A. Yes.
2 Q. Is it true that you're aware of the Swatch brand in
3 association with watches?
4 A. Yes.
5 Q. Is it true that you have seen Swatch displayed in
6 Times Square and internationally?
7 A. Yes. After this came up and we got a letter from
8 Swatch, I was in New York and I saw the store there --
9 Q. Do the --
10     MR. UTERMOHLEN:
11     Let her finish her question --
12 A. Yeah. Before that, I had never seen it in an
13 outlet near us, but after, you know, visiting New York,
14 I did see it there.
15 MR. GULICK:
16 Q. Are you aware of the Swatch store in the Houston
17 airport?
18 A. No.
19 Q. Have you been to the Houston airport?
20 A. I can't say I usually fly to that airport, no.
21 Q. Was the Swatch name chosen because of the
22 interchangeability feature of the watch?
23 A. Can you repeat that? I'm sorry.
24 Q. Actually, let me rephrase it. The name "Swap" was
25 selected because of the interchangeability feature of
- 12 -

1 the watch, correct?
2 A. We thought it suggested that, yes.
3 Q. Has the word "watch" been used in association with
4 Swap, such as "Swap Watch"?
5     MR. UTERMOHLEN:
6     Objection, beyond the scope of direct.
7 A. I believe so.
8 MR. GULICK:
9 Q. Swap mark is used in association with beaded watch
10 bands and watch faces? Is that correct?
11 A. That's correct.
12     MR. UTERMOHLEN:
13     Same objection.
14 MR. GULICK:
15 Q. Did the term "Swap" for you mean interchangeable?
16 A. I believe it suggests that.
17 Q. Were you previously deposed in this matter?
18 A. Yes.
19     MR. UTERMOHLEN:
20     I object to this line of questioning as
21 beyond the scope of direct.
22     MR. GULICK:
23     You can make the objection for the record.
24 However, this did come up during the direct
25 examination.
- 13 -

**Sara Jo Hood**
Certified Court Reporter
State of Louisiana
318 927-4771

**DEPOSITION OF AMY BERNARD**

*MINIDEP by Kenson*

MR. GULICK:
Q. Is interchangeability one of the features of the Swap Watch?
A. Sure. We have beaded bands and faces which we sell separately because one can choose what band they want to go with what face.
Q. Do you recall stating in your previous testimony that Swap meant interchangeable?
A. I don't specifically recall.
Q. You were deposed September 7, 2006, in this matter?
A. If you say so (laughing). I don't remember the exact date, but I'm sure.
Q. Do you remember being asked the question: "So how was it decided that Swap was going to be the name?" Followed by an answer: "It was one everyone liked in our office. It was short. It meant interchangeable"?
A. I don't specifically recall, but yeah, I could have.
Q. You mentioned previously that you first learned of the Swatch mark roughly in the seventh grade?
A. Yeah. 1980, I guess.
Q. Have you seen the brand since that date?
A. Yes. After this came up --
Q. Have you seen a store --
A. -- I noticed the store.

- 14 -

MR. UTERMOHLEN:
Let her finish her answer.
A. After this came up, I saw the store in Times Square, but I haven't seen it in a regional outlet near us, only in a branded store. In their own store.
MR. GULICK:
Q. I'm sorry. When you say "branded store," what do you mean?
A. In their own store. In a store that only sells Swatch products. That's the only time I've seen it.
Q. A Swatch store, in other words?
A. In Times Square. That's the only time I've seen it sold in a retail outlet.
Q. Does the name "Beehive" appear on any of the watches that contain the Swap mark?
MR. UTERMOHLEN:
Objection, beyond the scope of direct.
A. I'm pretty sure on all our packaging we put "by Beehive." I'd have to look at the packaging, but I'm pretty certain that almost on all carding and tagging we put "by Beehive" on all the products that we sell.
MR. GULICK:
I have nothing further for this particular witness.
MR. UTERMOHLEN:

- 15 -

All right.
(Witness excused)

I, AMY BERNARD, do hereby certify that I have read the foregoing transcript and that the same and accompanying change sheets, if any, constitute a true and complete record of my testimony.

- 16 -

STATE OF LOUISIANA :
PARISH OF LINCOLN :

I, Sara Jo Hood, Certified Court Reporter in and for the State of Louisiana, do hereby certify that the said witness came before me at 8:15 o'clock a.m., on the 14th day of October, 2009, and after she was first duly sworn, she was examined and testified as shown; that the testimony was reported by me and thereafter transcribed by me and is a true and correct record of the testimony given by the witness; that the adverse party was not present for the taking of the deposition.

I further hereby certify that the officer before whom this deposition was taken was not disqualified as specified in Rule 28 of the Federal Rules of Civil Procedure.

I further certify that I am not of counsel or related to or employed by any of the parties to this cause or by their attorneys or in any wise interested in the event thereof.

SUBSCRIBED AND SWORN TO on this the 3rd day of November, 2009.

Sara Jo Hood
Certified Court Reporter
Certificate No. 87336
State of Louisiana

- 17 -

**Amy Bernard**

1  All right.

2  (Witness excused)

3

4

5

6

7

8  I, AMY BERNARD, do hereby certify that I have read
9  the foregoing transcript and that the same and
10 accompanying change sheets, if any, constitute a true
11 and complete record of my testimony.
12
13  _____
14  AMY BERNARD

STATE OF LOUISIANA   :

PARISH OF LINCOLN    :

I, Sara Jo Hood, Certified Court Reporter in and for the State of Louisiana, do hereby certify that the said witness came before me at 8:15 o'clock a.m., on the 14th day of October, 2009, and after she was first duly sworn, she was examined and testified as shown; that the testimony was reported by me and thereafter transcribed by me and is a true and correct record of the testimony given by the witness; that the adverse party was not present for the taking of the deposition.

I further hereby certify that the officer before whom this deposition was taken was not disqualified as specified in Rule 28 of the Federal Rules of Civil Procedure.

I further certify that I am not of counsel or related to or employed by any of the parties to this cause or by their attorneys or in any wise interested in the event thereof.

SUBSCRIBED AND SWORN TO on this the 3rd day of November, 2009.



OFFICIAL SEAL
SARA JO HOOD
Certified Court Reporter
in and for the State of Louisiana
Certificate Number 87336
Certificate expires 12-31-09

Sara Jo Hood
Certified Court Reporter
Certificate No. 87336
State of Louisiana