# EXHIBIT 80

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

```
_____X
                               )
SWATCH S.A.,                   )
                               )
            Plaintiff,         )        Civil Action No. 1:11-cv-434 LO/JFA
                               )
        v.                     )
                               )
BEEHIVE WHOLESALE, L.L.C.,     )
                               )
            Defendant.         )
_____X
```

## DEFENDANT'S RESPONSES TO PLAINTIFF'S
## FIRST SET OF REQUESTS FOR ADMISSION

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, defendant Beehive

Wholesale, LLC ("Beehive") responds to plaintiff Swatch S.A.'s ("Swatch") First Set of Requests

for Admission as set forth below.

**REQUEST NO.1:**  All documents produced by Defendant in response to Plaintiff's First
Request for Production of Documents in this proceeding are authentic pursuant to the Federal
Rules of Evidence.

**Beehive's Objections:** Beehive objects to "authentic" as vague and ambiguous.  Fed. R. Evid. 901

addresses "authenticity" as a condition precedent to admissibility of evidence.  However,

"authenticity" is defined only in relation to "what its proponent claims."  Beehive has no way of

knowing what Swatch may contend each of the recited documents produced by Beehive may be.

Beehive will consider an appropriate stipulation as to the authenticity or admissibility of documents

on an individual basis.

**REQUEST NO.2:**    All documents produced by Defendant in response to Plaintiff's First
Request for Production of Documents in this proceeding are genuine pursuant to the Federal
Rules of Civil Procedure.

**Beehive's Objections:** Beehive objects to "genuine" as vague and ambiguous.

**Beehive's Answer:** Beehive does not know what is meant by asking whether all documents are genuine pursuant to the Federal Rules of Civil Procedure. Beehive admits that it is not currently aware of any produced documents that have been forged or intentionally made to appear to be something they are not.

**REQUEST NO.3:** All documents produced by Defendant in response to Plaintiff's First Request for Production of Documents in this proceeding are part of the business records of Defendant kept in the normal course of Defendant's business.

**Beehive's Objections:** Beehive objects to "the business records of Defendant kept in the normal course of Defendant's business" as vague and ambiguous.

**Beehive's Answer:** Denied.

**REQUEST NO.4:** All documents produced by Defendant in response to Plaintiff's First Request for Production of Documents in this proceeding are admissible as evidence in this proceeding under the Federal Rules of Evidence, subject to any objections of Defendant on the grounds of relevance.

**Beehive's Answer:** Denied.

**REQUEST NO.5:** Admit Defendant created two websites www.beehivewholesale.com and www.bestofbeehive.com to sell Beehive products, including products bearing the SWAP marks.

**Beehive's Answer:** Admitted in part, in that, at times, such websites have sold Beehive products, including products bearing the SWAP marks.

**REQUEST NO.6:** Admit Defendant uses the domain www.bestofbeehive.com to promote, advertise, otherwise market, and sell SWAP products directly to consumers.

**Beehive's Objections:** Beehive objects to "promote, advertise, otherwise market, and sell," "directly" and "consumers" as vague and ambiguous.

**Beehive's Answer:** Admitted as to promotion, advertising and sale of SWAP products.

**REQUEST NO.7:** Admit Defendant sells products in connection with the SWAP mark on the website www.bestofbeehive.com.

**Beehive's Objections:** Beehive objects to "in connection with" as vague and ambiguous.

2

**Beehive's Answer:** Admitted that Beehive sells products bearing the SWAP mark on the website

www.bestofbeehive.com.

**REQUEST NO.8:** Admit Defendant has sold products in connection with the SWAP mark on the website www.bestofbeehive.com since 2008.

**Beehive's Objections:** Beehive objects to "in connection with" as vague and ambiguous.

**Beehive's Answer:** Beehive admits that products bearing the SWAP mark have been sold on the

website www.bestofbeehive.com at times since about August 26, 2008.

**REQUEST NO.9:** Admit Defendant has sold products in connection with the SWAP mark on the website www.bestofbeehive.com since 2009.

**Beehive's Objections:** Beehive objects to "in connection with" as vague and ambiguous.

**Beehive's Answer:** Admitted that Beehive has sold products bearing the SWAP mark on the website

www.bestofbeehive.com since 2009.

**REQUEST NO. 10:** Admit Defendant has sold products in connection with the SWAP mark on the website www.bestofbeehive.com since 2010.

**Beehive's Objections:** Beehive objects to "in connection with" as vague and ambiguous.

**Beehive's Answer:** Admitted that Beehive has sold products bearing the SWAP mark on the website

www.bestofbeehive.com since 2010.

**REQUEST NO. 11:** Admit Defendant has sold products in connection with the SWAP mark on the website www.bestofbeehive.com since 2011.

**Beehive's Objections:** Beehive objects to "in connection with" as vague and ambiguous.

**Beehive's Answer:** Admitted that Beehive has sold products bearing the SWAP mark on the website

www.bestofbeehive.com since 2011.

**REQUEST NO. 12:** Admit that individual consumers can purchase products bearing the SWAP mark from the website www.bestofbeehive.com.

**Beehive's Objections:** Beehive objects to "individual consumers" as vague and ambiguous.

**Beehive's Answer:** Admitted.

**REQUEST NO. 13:** Admit that individual consumers have been able to purchase products bearing the SWAP mark from the website www.bestofbeehive.com since 2008.

**Beehive's Objections:** Beehive objects to "individual consumers" as vague and ambiguous.

**Beehive's Answer:** Beehive admits that purchase of products bearing the SWAP mark on the

website www.bestofbeehive.com has been possible since about August 26, 2008.

**REQUEST NO. 14:** Admit that individual consumers have been able to purchase products bearing the SWAP mark from the website www.bestofbeehive.com since 2009.

**Beehive's Objections:** Beehive objects to "individual consumers" as vague and ambiguous.

**Beehive's Answer:** Admitted.

**REQUEST NO. 15:** Admit that individual consumers have been able to purchase products bearing the SWAP mark from the website www.bestofbeehive.com since 2010.

**Beehive's Objections:** Beehive objects to "individual consumers" as vague and ambiguous.

**Beehive's Answer:** Admitted.

**REQUEST NO. 16:** Admit that individual consumers have been able to purchase products bearing the SWAP mark from the website www.bestofbeehive.com since 2011.

**Beehive's Objections:** Beehive objects to "individual consumers" as vague and ambiguous.

**Beehive's Answer:** Admitted.

**REQUEST NO. 17:** Admit that the sale of products bearing the SWAP mark via the website www.bestofbeehive.com is not limited to wholesalers.

**Beehive's Objections:** Beehive objects to "wholesalers" as vague and ambiguous.

**Beehive's Answer:** Admitted that sales of products bearing the SWAP mark through the website

www.bestofbeehive.com are not limited to retail store purchasers.

**REQUEST NO. 18:** Defendant has used the SWAP mark in stylized form.

**Beehive's Answer:** Admitted.

**REQUEST NO. 19:** Defendant has used the SWAP mark in stylized form as depicted below:



**Beehive's Answer:** Admitted.

**REQUEST NO. 20:** Defendant has used the SWAP mark in stylized form as depicted below:



**Beehive's Answer:** Admitted.

**REQUEST NO. 21:** Defendant does not manufacture its SWAP products.

**Beehive's Objections:** Beehive objects to this request as vague and ambiguous.

**Beehive's Answer:** Admitted that Beehive's SWAP products are manufactured by suppliers to Beehive's specifications.

**REQUEST NO. 22:** Defendant is aware of third party uses of the term "SWAP" for watches.

**Beehive's Objections:** Beehive objects to "is aware of third party uses" as vague and ambiguous.

**Beehive's Answer:** Denied that Beehive is currently aware of third party uses in the United States of the term "SWAP" for watches.

**REQUEST NO. 23:** Defendant is aware of use of the term "SWAP" for watches by PUMA.

**Beehive's Objections:** Beehive objects to "is aware of use" as vague and ambiguous.

**Beehive's Answer:** Denied that Beehive is currently aware of use of the term "SWAP" for watches by PUMA.

**REQUEST NO. 24:** Defendant is aware of use of the term "SWAP" for watches by Orange County Creations.

**Beehive's Objections:** Beehive objects to "is aware of use" as vague and ambiguous.

**Beehive's Answer:** Denied that Beehive is currently aware of use of the term "SWAP" for watches by Orange County Creations.

**REQUEST NO. 25:** Amy Bernard testified on behalf of Defendant in a deposition on September 7, 2006.

**Beehive's Answer:** Denied.

**REQUEST NO. 26:** Amy Bernard was under oath when testifying in a deposition on September 7, 2006.

**Beehive's Answer:** Admitted.

**REQUEST NO. 27:** Amy Bernard testified on September 7, 2006 that in selecting a name for its products the intention was to select "a word that meant interchangeable."

**Beehive's Answer:** Admitted that Amy Bernard testified, in part, that "[SWAP] was the one

everyone liked in our office. It was short. It meant interchangeable."

**REQUEST NO. 28:** Amy Bernard testified on September 7, 2006 that interchangeability "was the basis of [the SWAP] line, that you could swap out bands with faces and create your own watch basically."

**Beehive's Answer:** Admitted that Amy Bernard testified, in part, as recited.

**REQUEST NO. 29:** Amy Bernard testified on September 7, 2006 that the mark SWAP was selected for Beehive's Class 14 products because "It meant interchangeable."

**Beehive's Answer:** Admitted that Amy Bernard testified, in part, that "[SWAP] was the one

everyone liked in our office. It was short. It meant interchangeable."

**REQUEST NO. 30:** Amy Bernard testified on September 7, 2006 that "interchangeable" was a function of Beehive's products bearing the SWAP marks.

**Beehive's Answer:** Admitted that Amy Bernard testified, in part, as recited, but not that she was

referring to the trademark significance of the mark SWAP.

**REQUEST NO. 31:** Amy Bernard testified on September 7, 2006 that the mark SWAP described the function of Beehive's products sold under the SWAP mark.

**Beehive's Answer:** Denied.

**REQUEST NO. 32:** Brent Bernard testified on behalf of Defendant in a deposition on September 7, 2006.

**Beehive's Answer:** Admitted.

**REQUEST NO. 33:** Brent Bernard was under oath when testifying in a deposition on September 7, 2006.

**Beehive's Answer:** Admitted.

**REQUEST NO. 34:** Brent Bernard testified on September 7, 2006 that Beehive selected the mark SWAP because it sought "a term that defined interchangeable."

**Beehive's Answer:** Admitted that Brent Bernard testified, in part, as recited, but not that he was

referring to the trademark significance of the mark SWAP.

**REQUEST NO. 35:** Brent Bernard testified on September 7, 2006 that it was important to select a mark that meant interchangeable "[b]ecause we - in that product line we sell custom components that are interchangeable."

**Beehive's Answer:** Denied that Swatch has fairly characterized Mr. Bernard's testimony.

**REQUEST NO. 36:** Brent Bernard testified on September 7, 2006 that the custom components that are interchangeable which Beehive sells are "[w]atch bands, watch faces."

**Beehive's Answer:** Admitted.

**REQUEST NO. 37:** Brent Bernard admitted on September 7, 2006 that the Beehive selected the name SWAP over other terms because it defined what can be done with the product.

**Beehive's Answer:** Admitted that Brent Bernard testified, in part, as recited, but not that he was

referring to the trademark significance of the mark SWAP.

**REQUEST NO. 38:** Brent Bernard admitted on September 7, 2006 that the Beehive selected the name SWAP over other terms because it best described a function of the product.

**Beehive's Answer:** Admitted that Brent Bernard testified, in part, as recited, but not that he was

referring to the trademark significance of the mark SWAP.

Dated: July 14, 2011                    Respectfully submitted,


                                        _____/s/_____
                                        William J. Utermohlen, VSB 41,228
                                        James A. Oliff, VSB 14,658
                                        OLIFF & BERRIDGE, PLC
                                        277 South Washington Street
                                        Suite 500
                                        Alexandria, VA 22314
                                        tel: 703-836-6400
                                        fax: 703-836-2787
                                        wutermohlen@oliff.com

                                        Attorneys for Defendant Beehive

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of July, 2011, I will cause the foregoing to be forwarded

by electronic mail (by agreement) and U.S. mail, to the following:

> Kenneth W. Curtis, Esq.
> ALLRED, BACON, HALFHILL & YOUNG
> 11350 Random Hills Road, Suite 700
> Fairfax, VA 22030
> kcurtislaw@msn.com
> KCurtis@abhyLaw.com
>
> Jess M. Collen, Esq.
> Thomas P. Gulick, Esq.
> COLLEN *IP*
> jcollen@collenip.com
> tgulick@collenip.com

_____/s/_____
William J. Utermohlen

# EXHIBIT 81

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

|  |  |
|---|---|
| _____X | |
| ) | |
| SWATCH S.A., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 1:11-cv-434 LO/JFA |
| ) | |
| v. ) | |
| ) | |
| BEEHIVE WHOLESALE, L.L.C., ) | |
| ) | |
| Defendant. ) | |
| _____X | |

## DEFENDANT'S RESPONSES TO PLAINTIFF'S
## FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, defendant Beehive

Wholesale, LLC ("Beehive") responds to plaintiff Swatch S.A.'s ("Swatch") First Set of

Interrogatories as set forth below.

### GENERAL OBJECTIONS

1.    Beehive objects to Swatch's Interrogatories to the extent they seek to impose

obligations beyond those specified by Rules 26, 33 and 34 of the Federal Rules of Civil

Procedure, other applicable federal rules, the Local Rules of the District Court for the Eastern

District of Virginia, the parties' Joint Discovery Plan and the Rule 16(b) Scheduling Order

entered by the Court on May 19, 2011.

2.    Beehive objects to Swatch's Interrogatories to the extent that they call for the

identification or disclosure of information or documents (collectively herein, "privileged

information") which: (a) is protected by the attorney-client or other privileges; (b) is immune

from discovery as attorney work product or trial preparation material; (c) reveals or may tend to

RECVD 7/18/11
DKT 1
DKT 2

reveal present, future and/or potential future plans or strategy with respect to the dispute that is the subject of these actions and/or related actions; and/or (d) are otherwise protected by Rule 26 of the Federal Rules of Civil Procedure. Beehive also reserves the right to assert other privileges under Rule 501 of the Federal Rules of Evidence.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO.1:** Other than those already disclosed in Trademark Trial and Appeal Board Opposition No. 91169312, set forth the amount of sales in dollars in the United States since the first sale, broken down on a yearly basis, for each product or products sold or to be sold by Beehive under the trademark SWAP, by point of sale.

**Beehive's Objections:** Beehive incorporates its General Objections above. In addition, Beehive objects to "each product or products sold or to be sold" as vague and ambiguous. Beehive also objects to "point of sale" as vague and ambiguous by mixing wholesale and retail "points," as well as mixing the concepts of "locations and/or means," which results in overlap between the points of sale and renders a precise meaning impossible to ascertain. Beehive also objects to producing sales data simultaneously sorted by individual product and point of sale, as Beehive's accounting software is not capable of doing so. If possible, Beehive will provide sales data for SWAP products as a whole, sorted by customer.

**Beehive's Response:** As previously addressed, Beehive does not have full sales data back to the first sale of SWAP-branded products, which occurred in June 2003, but only from the commencement of Beehive's current accounting system, in approximately the beginning of 2005. As to sales since January 2005, please refer to Beehive document numbers B000740-B000874, produced herewith.

**INTERROGATORY NO.2:** Other than those already disclosed in Trademark Trial and Appeal Board Opposition No. 91169312, identify any and all third parties of which Defendant is aware that sell watches under the name or mark SWAP.

**Beehive's Response:** Beehive is not aware of third parties that currently sell watches using the term SWAP in the United States. Beehive understands that Sound and Vision Solutions Limited t/a Alto Audio Visual claims to be using the mark SWAP in certain jurisdictions outside the

United States.  In April 2011, Etsy, Inc. was marketing a "Bracelet Watch," which was

sometimes referred to as a "Swap Bracelet Watch" or "Swap Bracelet."  In addition,

alwaysaffordablejewelry.com and handcraftedtrinketsofhope.com were using the term Swap

inappropriately in April 2011.  Beehive understands that all those uses have been corrected.

**INTERROGATORY NO.3:**  Identify any and all actions taken by Defendant with respect to third
parties identified in Interrogatory No.2.

**Beehive's Objections:**  Beehive incorporates its General Objections above.  In addition, Beehive

objects to "actions" as vague and ambiguous.

**Beehive's Response:**  Beehive will produce correspondence with the parties mentioned in the

response to Interrogatory No. 2, from which the information sought by this interrogatory may be

derived.  See Beehive document numbers B001005-B001044, produced herewith.

**INTERROGATORY NO.4:**  Identify when Defendant first commenced use of the website,
www.bestofbeehive.com. to sell products bearing the SWAP mark.

**Beehive's Response:**  Beehive understands "use of the website, www.bestofbeehive.com. to sell

products" to mean make sales through that website.  Beehive began selling products through

www.bestofbeehive.com by about August 26, 2008.

**INTERROGATORY NO.5:**  Identify the date when Defendant first sold products bearing the
SWAP mark on the website, www.bestofbeehive.com.

**Beehive's Response:**  Beehive began selling products through www.bestofbeehive.com by about

August 26, 2008.

**INTERROGATORY NO.6:**  Identify all persons, their positions, title, employer and address of
those who have participated in any way in the preparation of the answer and responses to these
Interrogatories. If more than one individual is identified, state specifically, with reference to
Interrogatory numbers, the areas of participation of each such person.

**Beehive's Objections:**  Beehive incorporates its General Objections above.  In addition, Beehive

objects to "participated in any way" as vague and ambiguous.

**Beehive's Response:** All the persons, other than counsel, who participated in preparing the responses to these interrogatories, are employed by Beehive Wholesale, LLC. They include:

1.      Brent Bernard, President. General involvement in responses.

2.      Amy Bernard, co-owner. General involvement in responses.

3.      Michelle Bernard, Chief Operating Officer. Supervision of assembly of documents; preparing responsive sales reports.

4.      Jack Rome, Jr., Chief Financial Officer, preparation of profit analysis.

**INTERROGATORY NO.7:** Identify all witnesses and documents the Defendant will rely upon in support of all Affirmative Defenses.

**Beehive's Response:** Beehive has not yet determined which witnesses and documents it will rely upon in support of its Affirmative Defenses, particularly because Beehive does not know the evidence on which Swatch will rely in its case-in-chief. However, the potential witnesses include Brent Bernard, Amy Bernard, Michelle Bernard, Jack Rome, Jr. and Beehive's customers. The documents include those reflecting Beehive's Swap sales and Swatch's discovery responses.

**INTERROGATORY NO.8:** Provide Defendant's total annual sales and total annual profits for goods bearing the SWAP mark from January 2009 to the present, both in quantities sold and in U.S. dollars.

**Beehive's Response:** For total annual sales, please refer to Beehive's document numbers B000740-742 and B000745-762. Total annual profits are not tracked for "goods bearing the SWAP mark." The best available data is the allocated share of Beehive's overall profits, as to which see Beehive's document numbers B001045-1048.

4

## **VERIFICATION**

I, Brent Bernard, am President of Beehive Wholesale, Inc., and am authorized to make this verification for and on behalf of Beehive Wholesale, Inc.  I have read the foregoing Defendant's Responses to Plaintiff's First Set of Interrogatories.  I declare under penalty of perjury that the responses are true and correct to the best of my knowledge, information and belief.


Brent Bernard

Dated: July 14, 2011                    Respectfully submitted,


                                        _____/s/_____
                                        William J. Utermohlen, VSB 41,228
                                        James A. Oliff, VSB 14,658
                                        OLIFF & BERRIDGE, PLC
                                        277 South Washington Street
                                        Suite 500
                                        Alexandria, VA 22314
                                        tel: 703-836-6400
                                        fax: 703-836-2787
                                        wutermohlen@oliff.com

                                        Attorneys for Defendant Beehive

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of July, 2011, I will cause the foregoing to be forwarded

by electronic mail (by agreement) and U.S. mail, to the following:

> Kenneth W. Curtis, Esq.
> ALLRED, BACON, HALFHILL & YOUNG
> 11350 Random Hills Road, Suite 700
> Fairfax, VA 22030
> kcurtislaw@msn.com
> KCurtis@abhyLaw.com
>
> Jess M. Collen, Esq.
> Thomas P. Gulick, Esq.
> COLLEN *IP*
> jcollen@collenip.com
> tgulick@collenip.com

_____/s/_____
William J. Utermohlen

# EXHIBIT 82



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

# Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Aug 16 04:35:46 EDT 2011*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | PREV LIST | NEXT LIST | IMAGE LIST | BOTTOM |
|---|---|---|---|---|---|---|---|---|---|
| HELP | | | | | | | | | |

Logout  *Please logout when you are done to release system resources allocated for you.*

Start List At: _____   OR   Jump to record: _____

## 26 Records(s) found (This page: 1 ~ 26)

Refine Search (live)[LD] AND (SWATCH)[COMB]   Submit

Current Search: S1: (live)[LD] AND (SWATCH)[COMB] docs: 26 occ: 84

|  | Serial Number | Reg. Number | Word Mark | Check Status | Live/Dead |
|---|---|---|---|---|---|
| 1 | 79053143 | 3554475 | ESWATCH | TARR | LIVE |
| 2 | 79053142 | 3567953 | ISWATCH | TARR | LIVE |
| 3 | 79039541 | 3462551 | SWATCH VENDOME COLLECTION | TARR | LIVE |
| 4 | 79030492 | 3344485 | SWATCH JELLY IN JELLY | TARR | LIVE |
| 5 | 79022289 | 3291129 | SWATCH INDIVIDUAL STATEMENT | TARR | LIVE |
| 6 | 79022254 | 3298210 | SWATCH SHAKE THE WORLD | TARR | LIVE |
| 7 | 79011035 | 3171670 | SWATCH ALWAYS SURPRISING | TARR | LIVE |
| 8 | 79003943 | 3021150 | SWATCH PAPARAZZI | TARR | LIVE |
| 9 | 79000474 | 2963467 | SWATCH DOGWALK | TARR | LIVE |
| 10 | 79000473 | 2963466 | SWATCH PATCHWORK | TARR | LIVE |
| 11 | 78194325 | 3799562 | SWATCH | TARR | LIVE |
| 12 | 78124477 | 2752980 | SWATCH | TARR | LIVE |
| 13 | 77622687 | 3909701 | SWATCH THE CLUB | TARR | LIVE |
| 14 | 77504649 | | SWATCHBALL | TARR | LIVE |
| 15 | 75977644 | 2217468 | SWATCH | TARR | LIVE |
| 16 | 75314480 | 2248707 | SWATCH A C C E S S | TARR | LIVE |
| 17 | 74801004 | 1799862 | SWATCH | TARR | LIVE |
| 18 | 74641474 | 2050210 | SWATCH | TARR | LIVE |
| 19 | 74628211 | 1942870 | SWATCH IRONY | TARR | LIVE |
| 20 | 74579325 | 2100605 | SWATCH | TARR | LIVE |
| 21 | 74578861 | 1980517 | SWATCH | TARR | LIVE |
| 22 | 74248413 | 1849657 | SWATCH | TARR | LIVE |
| 23 | 74079220 | 1671076 | SWATCH | TARR | LIVE |
| 24 | 74051641 | 1664054 | SWATCH SCUBA 200 | TARR | LIVE |

| 25 | 73681174 | 1490111 | POP SWATCH | TARR | LIVE |
|----|----------|---------|------------|------|------|
| 26 | 73506848 | 1356512 | SWATCH | TARR | LIVE |

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | PREV LIST | NEXT LIST | IMAGE LIST | TOP

HELP

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

Int. Cls.: 14, 35 and 37

Prior U.S. Cls.: 2, 27, 28, 50, 100, 101, 102, 103 and 106

**United States Patent and Trademark Office**

Reg. No. 3,554,475

Registered Dec. 30, 2008

## TRADEMARK
## SERVICE MARK
### PRINCIPAL REGISTER



SWATCH AG (SWATCH SA) (SWATCH LTD) (SWITZERLAND SOCIÉTÉ ANONYME (JOINT STOCK COMPANY, SOCIEDAD ANONIMA)) JAKOB-STÄMPFLI-STRASSE 94 CH-2502 BIEL/BIENNE SWITZERLAND

FOR: PRECIOUS METALS AND THEIR ALLOYS, NAMELY, WHITE GOLD, YELLOW GOLD, PINK GOLD, JEWELRY WATCHES, PRECIOUS STONES, NAMELY, DIAMOND, SAPPHIRE, RUBY, EMERALD, HOROLOGICAL AND CHRONOMETRIC INSTRUMENTS, NAMELY, WATCH CASES, CHRONOGRAPHS, CHRONOMETERS FOR USE AS WATCHES, WATCHES, WATCH MOVEMENTS, IN CLASS 14 (U.S. CLS. 2, 27, 28 AND 50).

FOR: RETAIL STORE SERVICES IN THE FIELD OF HORLOGICAL INSTRUMENTS AND JEWELLERY, ON-LINE RETAIL STORE SERVICES IN THE FIELD OF HORLOGICAL INSTRUMENTS AND JEWELLERY, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FOR: REPAIR AND MAINTENANCE OF HOROLOGICAL PRODUCTS AND JEWELLERY, IN CLASS 37 (U.S. CLS. 100, 103 AND 106).

PRIORITY DATE OF 11-28-2007 IS CLAIMED.

OWNER OF INTERNATIONAL REGISTRATION 0962367 DATED 4-7-2008, EXPIRES 4-7-2018.

OWNER OF U.S. REG. NOS. 1,356,512 AND 2,752,980.

SER. NO. 79-053,143, FILED 4-7-2008.

RON FAIRBANKS, EXAMINING ATTORNEY

**Int. Cls.: 14, 35 and 37**

**Prior U.S. Cls.: 2, 27, 28, 50, 100, 101, 102, 103 and 106**

**United States Patent and Trademark Office**

Reg. No. 3,567,953

Registered Jan. 27, 2009

## TRADEMARK
## SERVICE MARK
### PRINCIPAL REGISTER



SWATCH AG (SWATCH SA) (SWATCH LTD) (SWITZERLAND SOCIÉTÉ ANONYME (JOINT STOCK COMPANY, SOCIEDAD ANONIMA))
JAKOB-STÄMPFLI-STRASSE 94
CH-2502 BIEL/BIENNE
SWITZERLAND

FOR: PRECIOUS METALS AND THEIR ALLOYS, NAMELY, WHITE GOLD, YELLOW GOLD, PINK GOLD, JEWELRY WATCHES, PRECIOUS STONES, NAMELY, DIAMOND, SAPPHIRE, RUBY, EMERALD, HOROLOGICAL AND CHRONOMETRIC INSTRUMENTS, NAMELY, WATCH CASES, CHRONOGRAPHS, CHRONOMETERS FOR USE AS WATCHES, WATCHES, WATCH MOVEMENTS, IN CLASS 14 (U.S. CLS. 2, 27, 28 AND 50).

FOR: RETAIL STORE SERVICES IN THE FIELD OF HOROLOGICAL INSTRUMENTS AND JEWELLERY, ON-LINE RETAIL STORE SERVICES IN THE FIELD OF HOROLOGICAL INSTRUMENTS AND JEWELLERY, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FOR: REPAIR AND MAINTENANCE OF HOROLOGICAL PRODUCTS AND JEWELLERY, IN CLASS 37 (U.S. CLS. 100, 103 AND 106).

PRIORITY DATE OF 11-28-2007 IS CLAIMED.

OWNER OF INTERNATIONAL REGISTRATION 0962366 DATED 4-7-2008, EXPIRES 4-7-2018.

OWNER OF U.S. REG. NOS. 1,356,512 AND 2,752,980.

SER. NO. 79-053,142, FILED 4-7-2008.

RON FAIRBANKS, EXAMINING ATTORNEY

Int. Cl.: 14

Prior U.S. Cls.: 2, 27, 28 and 50

Reg. No. 3,462,551

**United States Patent and Trademark Office**     Registered July 8, 2008

## TRADEMARK
### PRINCIPAL REGISTER

# SWATCH VENDOME COLLECTION

SWATCH AG (SWATCH SA) (SWATCH LTD)
(SWITZERLAND SOCIÉTÉ ANONYME (JOINT
STOCK COMPANY, SOCIEDAD ANONIMA))
JAKOB-STÄMPFLI-STRASSE 94
CH-2502 BIEL/BIENNE
SWITZERLAND

FOR: PRECIOUS METALS AND THEIR ALLOYS,
AND GOODS IN PRECIOUS METALS OR COATED
THEREWITH, NAMELY, JEWELRY CASES, CUFF-
LINKS, TIE CLIPS, HAIR CLIPS, TIARAS; JEWEL-
RY, PRECIOUS STONES; HOROLOGICAL AND
CHRONOMETRIC INSTRUMENTS, IN CLASS 14
(U.S. CLS. 2, 27, 28 AND 50).

THE MARK CONSISTS OF STANDARD CHAR-
ACTERS WITHOUT CLAIM TO ANY PARTICULAR
FONT, STYLE, SIZE, OR COLOR.

PRIORITY DATE OF 10-26-2006 IS CLAIMED.

OWNER OF INTERNATIONAL REGISTRATION
0926787 DATED 4-20-2007, EXPIRES 4-20-2017.

OWNER OF U.S. REG. NOS. 2,217,468, 2,248,707,
AND 3,171,670.

NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE "COLLECTION", APART FROM
THE MARK AS SHOWN.

THE TERM "VENDOME" DOES NOT HAVE A
MEANING IN A FOREIGN LANGUAGE.

SER. NO. 79-039,541, FILED 4-20-2007.

MARLENE BELL, EXAMINING ATTORNEY

Int. Cl.: 14

Prior U.S. Cls.: 2, 27, 28 and 50

United States Patent and Trademark Office

Reg. No. 3,344,485

Registered Nov. 27, 2007

## TRADEMARK
### PRINCIPAL REGISTER

# SWATCH jelly in jelly

SWATCH AG (SWATCH SA) (SWATCH LTD) (SWITZERLAND SOCIÉTÉ ANONYME (JOINT STOCK COMPANY, SOCIEDAD ANONIMA)) JAKOB-STÄMPFLI-STRASSE 94 CH-2502 BIEL/BIENNE, SWITZERLAND

FOR: JEWELRY AND WATCHES, IN CLASS 14 (U.S. CLS. 2, 27, 28 AND 50).

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

PRIORITY DATE OF 5-17-2006 IS CLAIMED.

OWNER OF INTERNATIONAL REGISTRATION 0902456 DATED 10-25-2006, EXPIRES 10-25-2016.

OWNER OF U.S. REG. NOS. 1,356,512, 2,752,980 AND OTHERS.

SER. NO. 79-030,492, FILED 10-25-2006.

PATRICIA EVANKO, EXAMINING ATTORNEY

Int. Cl.: 35

Prior U.S. Cls.: 100, 101 and 102

**United States Patent and Trademark Office**

Reg. No. 3,291,129

Registered Sep. 11, 2007

## SERVICE MARK
### PRINCIPAL REGISTER



SWATCH AG (SWATCH, SA) (SWATCH LTD.) (SWITZERLAND SOCIÉTÉ ANONYME (JOINT STOCK COMPANY, SOCIEDAD NONIMA)) JAKOB-STÄMPFLI-STRASSE 94 CH-2502 BIEL/BIENNE SWITZERLAND

FOR: RETAIL STORE SERVICES FEATURING JEWELRY AND HOROLOGICAL INSTRUMENTS AND PARTS THEREOF , IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

OWNER OF INTERNATIONAL REGISTRATION 0880667 DATED 3-14-2006, EXPIRES 3-14-2016.

OWNER OF U.S. REG. NOS. 1,799,862 AND 1,849,657.

THE MARK CONSISTS OF THE WORD "SWATCH" IN STYLIZED FORMAT WHERE THE LETTERS– "A" AND "T" ARE OBSCURED BY A NON-GEOMETRIC, IRREGULAR LINES WITH A STYLIZED STAR SUPERIMPOSED OVER THE SCRIBBLE DESIGN, UNDER WHICH THERE IS A SMALLER STYLIZED STAR DESIGN FOLLOWED BY THE WORDING, "INDIVIDUAL STATEMENT" IN LOWER CASE FONT.

THE ENGLISH TRANSLATION OF THE FOR-EIGN WORD(S) IN THE MARK IS: SWATCH INDI-VIDUAL STATEMENT.

SER. NO. 79-022,289, FILED 3-14-2006.

HOWARD SMIGA, EXAMINING ATTORNEY

Int. Cl.: 14

Prior U.S. Cls.: 2, 27, 28 and 50

**United States Patent and Trademark Office**

Reg. No. 3,298,210

Registered Sep. 25, 2007

## TRADEMARK
### PRINCIPAL REGISTER

# SWATCH shake the world

SWATCH AG (SWATCH SA) (SWATCH LTD.) (SWITZERLAND SOCIÉTÉ ANONYME (JOINT STOCK COMPANY, SOCIEDAD ANONIMA)) JAKOB-STÄMPFLI-STRASSE 94 CH-2502 BIEL/BIENNE SWITZERLAND

FOR: JEWELRY; HOROLOGICAL AND CHRONOMETRIC INSTRUMENTS AND PARTS THEREOF, IN CLASS 14 (U.S. CLS. 2, 27, 28 AND 50).

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

PRIORITY DATE OF 11-7-2005 IS CLAIMED.

OWNER OF INTERNATIONAL REGISTRATION 0880663 DATED 3-14-2006, EXPIRES 3-14-2016.

OWNER OF U.S. REG. NOS. 1,252,863, 3,021,150 AND OTHERS.

THE ENGLISH TRANSLATION OF THE FOREIGN WORD(S) IN THE MARK IS: SWATCH SHAKE THE WORLD.

SER. NO. 79-022,254, FILED 3-14-2006.

HOWARD SMIGA, EXAMINING ATTORNEY

Int. Cl.: 14

Prior U.S. Cls.: 2, 27, 28 and 50

**United States Patent and Trademark Office**

Reg. No. 3,171,670

Registered Nov. 14, 2006

## TRADEMARK
### PRINCIPAL REGISTER

**swatch** ALWAYS SURPRISING

SWATCH AG (SWATCH SA) SWATCH (LTD.) (SWITZERLAND CORPORATION)
94, RUE JAKOB STÄMPFLI
CH-2502 BIENNE
SWITZERLAND

    FOR: PRECIOUS METALS AND ALLOYS THERE-OF; OBJECTS MADE OF OR PLATED WITH PRE-CIOUS METALS AND THEIR ALLOYS, NAMELY, PURSES AND WALLETS OF PRECIOUS METAL, CUFF-LINKS, TIE CLIPS, HAIR CLIPS, TIARAS; JEWELRY; HOROLOGICAL AND CHRONOMET-RIC INSTRUMENTS, IN CLASS 14 (U.S. CLS. 2, 27, 28 AND 50).

PRIORITY DATE OF 2-9-2005 IS CLAIMED.

    OWNER OF INTERNATIONAL REGISTRATION 0849962 DATED 4-13-2005, EXPIRES 4-13-2015.

    OWNER OF U.S. REG. NOS. 1,356,512, 1,671,076, AND 2,752,980.

    SER. NO. 79-011,035, FILED 4-13-2005.

SUSAN BILLHEIMER, EXAMINING ATTORNEY

**Int. Cls.: 9 and 14**

**Prior U.S. Cls.: 2, 21, 23, 26, 27, 28, 36, 38 and 50**

**United States Patent and Trademark Office**

**Reg. No. 3,021,150**

Registered Nov. 29, 2005

## TRADEMARK
### PRINCIPAL REGISTER

# SWATCH PAPARAZZI

SWATCH AG (SWATCH SA) (SWATCH LTD.) (SWITZERLAND CORPORATION)

94, RUE JAKOB STÄMPFLI

CH-2502 BIEL/BIENNE, SWITZERLAND

FOR: SOUND TRANSMISSION AND REPRODUCTION APPARATUS, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FOR: HOROLOGICAL AND CHRONOMETRIC INSTRUMENTS, IN CLASS 14 (U.S. CLS. 2, 27, 28 AND 50).

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

PRIORITY DATE OF 6-17-2004 IS CLAIMED.

OWNER OF INTERNATIONAL REGISTRATION 0829212 DATED 6-29-2004, EXPIRES 6-29-2014.

SER. NO. 79-003,943, FILED 6-29-2004.

MELVIN AXILBUND, EXAMINING ATTORNEY

**Int. Cl.: 14**

**Prior U.S. Cls.: 2, 27, 28 and 50**

**United States Patent and Trademark Office**

**Reg. No. 2,963,467**

Registered June 21, 2005

## TRADEMARK
### PRINCIPAL REGISTER

# SWATCH DOGWALK

SWATCH AG (SWATCH SA) (SWATCH LTD.)
   (SWITZERLAND CORPORATION)
94, RUE JAKOB STÄMPFLI
CH-2502 BIEL/BIENNE
SWITZERLAND

FOR: JEWELRY, NAMELY EARRINGS, NECK-
LACES, PENDANTS, BRACELETS, BROOCHES
AND RINGS; TIME PIECES AND CHRONOMETRIC
INSTRUMENTS, NAMELY, WATCHES AND
CLOCKS, IN CLASS 14 (U.S. CLS. 2, 27, 28 AND 50).

THE MARK CONSISTS OF STANDARD CHAR-
ACTERS WITHOUT CLAIM TO ANY PARTICULAR
FONT, STYLE, SIZE, OR COLOR.

PRIORITY DATE OF 11-20-2003 IS CLAIMED.

OWNER OF INTERNATIONAL REGISTRATION
0816935 DATED 12-31-2003, EXPIRES 12-31-2013.

OWNER OF U.S. REG. NOS. 1,356,512, 2,752,980
AND OTHERS.

SER. NO. 79-000,474, FILED 12-31-2003.

JENNIFER MARTIN, EXAMINING ATTORNEY

Int. Cl.: 14

Prior U.S. Cls.: 2, 27, 28 and 50

**United States Patent and Trademark Office**

Reg. No. 2,963,466

Registered June 21, 2005

## TRADEMARK
### PRINCIPAL REGISTER

# SWATCH PATCHWORK

SWATCH AG (SWATCH SA) (SWATCH LTD.) (SWITZERLAND CORPORATION)
94, RUE JAKOB STÄMPFLI
CH-2502 BIEL/BIENNE
SWITZERLAND

FOR: JEWELRY, NAMELY EARRINGS, NECK-LACES, PENDANTS, BRACELETS, BROOCHES AND RINGS; TIME PIECES AND CHRONOMETRIC INSTRUMENTS, NAMELY, WATCHES AND CLOCKS, IN CLASS 14 (U.S. CLS. 2, 27, 28 AND 50).

THE MARK CONSISTS OF STANDARD CHAR-ACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

PRIORITY DATE OF 11-20-2003 IS CLAIMED.

OWNER OF INTERNATIONAL REGISTRATION 0816933 DATED 12-31-2003, EXPIRES 12-31-2013.

OWNER OF U.S. REG. NOS. 1,356,512, 2,752,980 AND OTHERS.

SER. NO. 79-000,473, FILED 12-31-2003.

DORITT L. CARROLL, EXAMINING ATTORNEY

# United States of America

## United States Patent and Trademark Office

## SWATCH

**Reg. No. 3,799,562**

**Registered June 8, 2010**

**Int. Cls.: 3, 8, 9, 11, 14, 15, 16, 18, 20, 21, 22, 24, 25, 28, 29, 32, 34, 35, 38 and 41**

**TRADEMARK**

**SERVICE MARK**

**PRINCIPAL REGISTER**



*David J. Kappos*

Director of the United States Patent and Trademark Office

SWATCH AG (SWATCH SA) (SWATCH LTD.) (SWITZERLAND CORPORATION)
94, RUE JACOB STÄMPFLI
BIENNE, SWITZERLAND 2500

FOR: PERFUMES; COLOGNES; COSMETICS, IN CLASS 3 (U.S. CLS. 1, 4, 6, 50, 51 AND 52).

FOR: RAZORS, IN CLASS 8 (U.S. CLS. 23, 28 AND 44).

FOR: SUNGLASSES; CASE FOR SPECTACLES; LEATHER EYEGLASS CASES; SPECTACLE RETAINING CORDS, AND SPECTACLE RETAINING CHAINS; MULTIFUNCTION TELE-COMMUNICATION APPARATUS; NAMELY, COMBINATION TELEPHONE AND ANSWER-ING MACHINE, COMBINATION WATCH AND COMPUTER; APPARATUS FOR TELECOM-MUNICATION, TRANSMISSION, RECEPTION, RECORDING, AND REPRODUCTION, NAMELY, RADIOS, TELEPHONES, TELEVISIONS, AUDIO, VIDEO, TAPE AND CASSETTE PLAYERS AND RECORDERS; PHONOGRAPH RECORDS AND PRE-RECORDED AUDIO COMPACT DISCS, TAPES, AND CASSETTES, ALL FEATURING MUSIC; PRE-RECORDED VIDEO DISCS, TAPES, AND CASSETTES OF ATHLETIC EVENTS, SCIENTIFIC AND NAUTICAL APPARATUS, NAMELY, SATELLITE NAVIGATIONAL SYSTEMS, BEEPERS, SURVEYING APPARATUS, NAMELY, SURVEYING CHAINS; PHOTOGRAPHIC AND CINEMATOGRAPHIC APPARATUS, NAMELY, PHOTOGRAPHIC CAMERAS, CINEMATO-GRAPHIC FILM; OPTICAL APPARATUS, NAMELY, OPTICAL SCANNERS, WEIGHING APPARATUS, NAMELY, SCALES AND CALIBRATING EQUIPMENT; MEASURING APPAR-ATUS, NAMELY, LASERS AND POCKET CALIPERS FOR MEASURING PURPOSES; SIG-NALING APPARATUS, NAMELY, SIGNAL WHISTLES, LIFE SAVING APPARATUS, NAMELY, LIFE SAVING RAFTS; APPARATUS AND INSTRUMENTS FOR CONDUCTING, SWITCHING, TRANSFORMING, ACCUMULATING, REGULATING OR CONTROLLING ELECTRICITY, NAMELY, ELECTRIC CONVERTERS, ELECTRIC TRANSFORMERS, VOLTAGE REGULATORS FOR ELECTRIC POWER, ELECTRIC SWITCHES; APPARATUS FOR RECORDING, TRANSMISSION OR REPRODUCTION OF SOUND OR IMAGE, NAMELY, JUKE BOXES, AUDIO TAPE RECORDERS, VIDEO TAPE RECORDERS, VIDEO MONITORS, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FOR: APPARATUS FOR LIGHTING, NAMELY, ELECTRIC LIGHTING FIXTURE, WATER PUMPS FOR SPAS, BATHS, WATER FILTERING UNITS, IN CLASS 11 (U.S. CLS. 13, 21, 23, 31 AND 34).

FOR: WATCH PROTECTORS; WATCHCASES; NECK CHAINS , IN CLASS 14 (U.S. CLS. 2, 27, 28 AND 50).

FOR: MUSICAL INSTRUMENTS, IN CLASS 15 (U.S. CLS. 2, 21 AND 36).

FOR: PAPER, NAMELY, BAGS, ENVELOPES, COVERS, FOLDERS, NOTE PAPER, ART PAPER, CARBON PAPER; PHOTOGRAPHS; ALBUMS, BALLS FOR BALL POINT PENS, BOOKLETS, BOOKS, BOXES OF CARDBOARD OR PAPER, CALENDARS, CARDBOARD ARTICLES AND TUBES, GREETING CARDS, PRINTED PUBLICATIONS, NAMELY,

**Reg. No. 3,799,562**

CATALOGUES, MAGAZINES, MANUALS, AND PERIODICALS ALL IN THE FIELD OF HOROLOGY AND JEWELRY; PRINTED TIMETABLES; CLIPS FOR OFFICES, FOLDERS FOR PAPERS, POSTCARDS, NOTEBOOKS, PHOTOGRAPH STANDS, POSTERS, PRINTS, RUBBER ERASERS, TABLE CLOTHS, TABLE MATS, TABLE LINEN, TABLE NAPKINS OF PAPER, STATIONERY; ARTIST'S MATERIALS, NAMELY, PASTELS, PENCILS, PAINT BRUSHES, PAINTER'S BRUSHES; PAPER CLASPS, PAPER CLIPS, CRAYONS, PEN CASES, PENCIL AND PEN HOLDERS, PENS AND PENCILS, PENCIL SHARPENERS, WRAPPERS, WRAPPING PAPER, WRITING CASES, WRISTBANDS FOR RETENTION OF WRITING IN-STRUMENTS , IN CLASS 16 (U.S. CLS. 2, 5, 22, 23, 29, 37, 38 AND 50).

FOR: SUITCASES, TRAVEL BAGS, BRIEFCASE-TYPE PORTFOLIOS, BRIEFCASES, WALLETS, HANDBAGS, UMBRELLAS, PARASOLS, CANES, BACKPACKS, SHOULDER BAGS, CASES OF LEATHER, NAMELY, LEATHER ATTACHE CASES, PURSES, RUCK-SACKS, SHOPPING BAGS, IN CLASS 18 (U.S. CLS. 1, 2, 3, 22 AND 41).

FOR: FURNITURE; NON-METAL KEY HOLDERS; CHAIRS, IN CLASS 20 (U.S. CLS. 2, 13, 22, 25, 32 AND 50).

FOR: HOUSEHOLD OR KITCHEN UTENSILS NOT OF PRECIOUS METAL OR COATED THEREWITH, NAMELY, POT AND PAN SCRAPERS, ROLLING PINS, SPATULAS, TURNERS, WHISKS, HOUSEHOLD OR KITCHEN CONTAINERS NOT OF PRECIOUS METAL OR COATED THEREWITH; HAIR COMBS; SPONGES FOR HOUSEHOLD PURPOSES; HAIR BRUSHES; BRUSH-MAKING MATERIALS; ARTICLES FOR CLEANING PURPOSES, NAMELY, CLEANING RAGS, IMPREGNATED CLEANING, DUSTING OR POLISHING CLOTHS, STEEL WOOL FOR CLEANING; BEVERAGE GLASSWARE; PORCELAIN FIGUR-INES, PORCELAIN MUGS; EARTHENWARE MUGS, IN CLASS 21 (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).

FOR: ROPES, STRING, TENTS, AWNINGS NOT MADE OF METAL; TARPAULINS, SAILS, NETS, NAMELY, COMMERCIAL NETS, FABRIC AND POLYESTER MESH NET USED FOR STORING TOYS AND OTHER HOUSEHOLD ITEMS, HAMMOCKS, IN CLASS 22 (U.S. CLS. 1, 2, 7, 19, 22, 42 AND 50).

FOR: TOWELS, HANDKERCHIEFS, BED BLANKETS, SHOWER CURTAINS, TABLE CLOTHS NOT OF PAPER, TABLE MATS NOT OF PAPER, IN CLASS 24 (U.S. CLS. 42 AND 50).

FOR: DOWN VESTS; WIND RESISTANT JACKETS; SKI BOOTS, IN CLASS 25 (U.S. CLS. 22 AND 39).

FOR: BOARD GAMES, GYMNASTIC AND SPORTS ARTICLES, NAMELY SKIS, SKI POLES, PORTABLE COVERS AND CASES FOR SKIS AND SKI BINDINGS, TENNIS RACKETS, TENNIS BALLS, TENNIS RACKET CASES AND COVERS, KITES, BALLS OF ALL KINDS, TOY FIGURES, SOFT-SCULPTURED DOLLS, AND STUFFED TOYS, TOY VEHICLES, SKATE BOARDS, ROLLER SKATES, BALLOONS, JIGSAW PUZZLES TOY WATCHES, TOY JEWELRY, CHRISTMAS TREE DECORATIONS, YOYOS, AND PLAYING CARDS, IN CLASS 28 (U.S. CLS. 22, 23, 38 AND 50).

FOR: MEATS AND PROCESSED FOODS, NAMELY, MEAT, CHICKEN, PROCESSED FRUITS AND VEGETABLES, CLAM CHOWDER, IN CLASS 29 (U.S. CL. 46).

FOR: BEVERAGES, NAMELY, FRUIT JUICE, VEGETABLE JUICE, CARBONATED SOFT DRINKS, IN CLASS 32 (U.S. CLS. 45, 46 AND 48).

FOR: CIGARETTE AND CIGAR LIGHTERS NOT OF PRECIOUS METAL, IN CLASS 34 (U.S. CLS. 2, 8, 9 AND 17).

FOR: MANAGEMENT OF BUSINESS; ADVERTISING AGENCIES; COMPUTER ASSISTED PROCESSING OF DATA DERIVED FROM THE TIMING OF SPORTING ACTIVITIES FOR

**Reg. No. 3,799,562**   USE IN EDUCATION, ENTERTAINMENT AND PUBLICITY, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FOR: ELECTRONIC TRANSMISSION OF DATA DERIVED FROM SPORTING EVENTS; AND RADIO AND TELEVISION BROADCAST OF PROGRAMS AND SHOWS, IN CLASS 38 (U.S. CLS. 100, 101 AND 104).

FOR: PROVIDING OF ENTERTAINMENT, NAMELY, SPORTING AND CULTURAL ACTIVITIES, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

OWNER OF SWITZERLAND REG. NO. 408332, DATED 4-1-1993, EXPIRES 4-1-2013.

OWNER OF U.S. REG. NOS. 1,671,076, 2,217,468 AND OTHERS.

SER. NO. 78-194,325, FILED 12-13-2002.

CHERYL CLAYTON, EXAMINING ATTORNEY

**Int. Cl.: 14**

**Prior U.S. Cls.: 2, 27, 28 and 50**

**Reg. No. 2,752,980**

## United States Patent and Trademark Office

Registered Aug. 19, 2003

## TRADEMARK
### PRINCIPAL REGISTER

## SWATCH

SWATCH S.A. (SWATCH A.G.) (SWATCH LTD.)
(SWITZERLAND CORPORATION)
94, RUE JAKOB STAMPFLI
BIENNE, SWITZERLAND CH-2501

    FOR: JEWELRY, NAMELY, EARRINGS, NECK-LACES, PENDANTS, BRACELETS AND RINGS, IN CLASS 14 (U.S. CLS. 2, 27, 28 AND 50).

    FIRST USE 8-0-2000; IN COMMERCE 8-0-2000.

    OWNER OF U.S. REG. NOS. 1,356,512, 2,217,468 AND OTHERS.

    SER. NO. 78-124,477, FILED 4-26-2002.

    APRIL L. RADEMACHER, EXAMINING ATTOR-NEY



# United States of America

## United States Patent and Trademark Office

# SWATCH THE CLUB

**Reg. No. 3,909,701**
**Registered Jan. 25, 2011**

**Int. Cls.: 35, 38, 41 and 45**

**SERVICE MARK**

**PRINCIPAL REGISTER**

SWATCH AG (SWATCH SA) (SWATCH LTD.) (SWITZERLAND CORPORATION)
94, RUE JAKOB STAMPFLI
BIENNE, SWITZERLAND 2500

FOR: PROVIDING CONSUMER PRODUCT INFORMATION, NAMELY, WATCH PRODUCT INFORMATION, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 1-1-1996; IN COMMERCE 1-1-1996.

FOR: ELECTRONIC TRANSMISSION OF WRITTEN AND PICTORIAL PRODUCT INFORMATION, IN CLASS 38 (U.S. CLS. 100, 101 AND 104).

FIRST USE 1-1-1996; IN COMMERCE 1-1-1996.

FOR: PUBLICATION OF AN ELECTRONIC MAGAZINE FEATURING WATCH FASHION, WATCH COLLECTION AND WATCH PRODUCT INFORMATION, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

FIRST USE 1-1-1996; IN COMMERCE 1-1-1996.

FOR: PROVIDING INFORMATION ABOUT WATCH FASHION , IN CLASS 45 (U.S. CLS. 100 AND 101).

FIRST USE 1-1-1996; IN COMMERCE 1-1-1996.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NOS. 1,356,512, 2,572,564 AND OTHERS.

SEC. 2(F) AS TO "CLUB".

SER. NO. 77-622,687, FILED 11-26-2008.

STEVEN JACKSON, EXAMINING ATTORNEY

Director of the United States Patent and Trademark Office

**Thank you for your request. Here are the latest results from the TARR web server.**

**This page was generated by the TARR system on** 2011-08-16 14:57:56 ET

**Serial Number:** 77504649 Assignment Information          Trademark Document Retrieval

**Registration Number:** (NOT AVAILABLE)

**Mark**

# SWATCHBALL

**(words only):** SWATCHBALL

**Standard Character claim:** Yes

**Current Status:** A suspension inquiry has been sent (issued) to the applicant. The applicant must respond to this suspension inquiry. To view all documents in this file, click on the Trademark Document Retrieval link at the top of this page.

**Date of Status:** 2011-05-19

**Filing Date:** 2008-06-20

**Transformed into a National Application:** No

**Registration Date:** (DATE NOT AVAILABLE)

**Register:** Principal

**Law Office Assigned:** LAW OFFICE 108

**Attorney Assigned:**
BUSH KAREN K

**Current Location:** L8X -TMEG Law Office 108 - Examining Attorney Assigned

**Date In Location:** 2011-05-19

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

---

1. Panavision Europe Limited

**Address:**
Panavision Europe Limited
Corporate Office, Metropolitan Centre Bristol Road
Greenford, Middlesex UB68GU
United Kingdom
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** United Kingdom

---

## GOODS AND/OR SERVICES

**International Class:** 009
**Class Status:** Active
Interactive computer software relating to the creation and selection of lighting, optical and other visual effects in the cinematographic, television, video, computer games and other visual and performing arts; electronic publications in the nature of magazines and interactive computer software for selection of, or otherwise relating to optical, lighting and photographic equipment, filters, filter holders, lens hoods, bellows, diffusers, shades, gobos, reflectors and other light or image-modifying equipment, and parts and fittings for such equipment
**Basis:** 1(b), 44(d)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**International Class:** 035
**Class Status:** Active
Online retail store services featuring goods for use in the production of films, television programmes, videos, computer games and in other visual and performing arts; online retail store services featuring goods for the creation and selection of lighting, optical or other visual effects in the cinematographic, television, video, computer games and other visual and performing arts; online retail store services featuring optical, lighting and photographic equipment, filters, filter holders, lens hoods, bellows, diffusers, shades, gobos, reflectors and other light or image-modifying equipment, and parts and fittings for such equipment
**Basis:** 1(b), 44(d)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

**International Class:** 041
**Class Status:** Active
Providing non-downloadable electronic on-line publications in the nature of interactive magazines relating to the creation and selection of lighting, optical and other visual effects in the cinematographic, television, video, computer games and other visual and performing arts; providing non-downloadable electronic on-line publications in the nature of magazines for selection of, or otherwise relating to optical, lighting and photographic equipment, filters, filter holders, lens hoods, bellows, diffusers, shades, gobos, reflectors and other light or image-modifying equipment, and parts and fittings for such equipment; consulting services in the field of interactive electronic magazines
**Basis:** 1(b), 44(d)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

---

## ADDITIONAL INFORMATION

**Foreign Application Number:** 6543524
**Country:** Erpn Cmnty TM Ofc
**Foreign Filing Date:** 2007-12-24

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

## PROSECUTION HISTORY

**NOTE: To view any document referenced below, click on the link to "Trademark Document
Retrieval" shown near the top of this page.**

2011-05-19 - Inquiry as to suspension mailed

2011-05-19 - Suspension Inquiry Written

2011-05-16 - LIE Checked Susp - To Atty For Action

2010-11-16 - Report Completed Suspension Check Case Still Suspended

2010-05-12 - Letter of suspension mailed

2010-05-11 - Suspension Letter Written

2010-05-07 - Teas/Email Correspondence Entered

2010-05-07 - Communication received from applicant

2010-04-28 - TEAS Response To Suspension Inquiry Received

2009-10-30 - Inquiry as to suspension mailed

2009-10-30 - Suspension Inquiry Written

2009-04-29 - Letter of suspension mailed

2009-04-29 - Suspension Letter Written

2009-04-02 - Teas/Email Correspondence Entered

2009-04-02 - Communication received from applicant

2009-03-30 - Assigned To LIE

2009-03-30 - TEAS Response to Office Action Received

2008-09-30 - Non-final action mailed

2008-09-29 - Non-Final Action Written

2008-09-25 - Assigned To Examiner

2008-06-25 - Notice Of Pseudo Mark Mailed

2008-06-24 - New Application Entered In Tram

---

## ATTORNEY/CORRESPONDENT INFORMATION

**Attorney of Record**
Rosemary S. Tarlton

**Correspondent**
ROSEMARY S. TARLTON
MORRISON & FOERSTER LLP
425 MARKET ST FL 30
SAN FRANCISCO, CA 94105-2482
Phone Number: 415-268-6810
Fax Number: 415-268-7522

---

Int. Cl.: 26

Prior U.S. Cls.: 37, 39, 40, 42 and 50

United States Patent and Trademark Office

Reg. No. 2,217,468

Registered Jan. 12, 1999

## TRADEMARK
### PRINCIPAL REGISTER

## SWATCH

SWATCH AG (SWATCH SA) (SWATCH LTD.)
   (SWITZERLAND CORPORATION)
94 RUE JAKOB STAMPFLI
BIENNE, SWITZERLAND

FOR: ORNAMENTAL NOVELTY PINS, IN
CLASS 26 (U.S. CLS. 37, 39, 40, 42 AND 50).

OWNER OF SWITZERLAND REG. NO.
337298, DATED 12-21-1984, EXPIRES 12-21-2004.
   OWNER OF U.S. REG. NO. 1,252,863 AND
OTHERS.

SER. NO. 75-977,644, FILED 9-28-1994.

JERI J. FICKES, EXAMINING ATTORNEY

Int. Cl.: 14

Prior U.S. Cls.: 2, 27, 28 and 50

Reg. No. 2,248,707

**United States Patent and Trademark Office**       Registered June 1, 1999

**TRADEMARK**
**PRINCIPAL REGISTER**

# swatch
# a c c e s s

SWATCH AG (SWATCH SA) (SWATCH LTD.) (SWITZERLAND CORPORATION)
94, RUE JAKOB STAMPFLI
BIENNE, SWITZERLAND

FOR: WATCHES AND PARTS THEREOF, IN CLASS 14 (U.S. CLS. 2, 27, 28 AND 50).
FIRST USE 10–4–1996; IN COMMERCE 10–4–1996.

OWNER OF SWITZERLAND REG. NO. 420825, DATED 7–20–1998, EXPIRES 7–20–2008.
OWNER OF U.S. REG. NOS. 1,252,863, 1,942,870 AND OTHERS.

SER. NO. 75–314,480, FILED 6–25–1997.

RUSS HERMAN, EXAMINING ATTORNEY

Int. Cl.: 42

Prior U.S. Cl.: 101

**United States Patent and Trademark Office**

Reg. No. 1,799,862
Registered Oct. 19, 1993

## SERVICE MARK
### PRINCIPAL REGISTER



SWATCH SA (SWITZERLAND CORPORA-
TION)
94, RUE JAKOB STAMPFLI
501 BIENNE, SWITZERLAND

FOR: RETAIL STORE SERVICES; NAMELY,
RETAIL SHOPS FEATURING WATCHES,
WATCH PARTS AND WATCH ACCESORIES,
IN CLASS 42 (U.S. CL. 101).

FIRST USE 11-0-1991; IN COMMERCE
3-20-1992.

OWNER OF U.S. REG. NOS. 1,490,111, 1,671,076
AND OTHERS.

SER. NO. 74–801,004, FILED 2-21-1992.

SASHA CARTER, EXAMINING ATTORNEY

Int. Cl.: 16

Prior U.S. Cls.: 2, 5, 22, 23, 29, 37, 38 and 50

**Reg. No. 2,050,210**

**United States Patent and Trademark Office**    Registered Apr. 8, 1997

## TRADEMARK
### PRINCIPAL REGISTER

# swatch

SWATCH AG (SWATCH SA) (SWATCH LTD.)
(SWITZERLAND CORPORATION)
94, RUE JAKOB STAMPFLI
2500 BIENNE, SWITZERLAND

FOR: BOOKS AND PERIODICALS, NAMELY
A SERIES OF BOOKS ILLUSTRATING COL-
LECTABLE ARTICLES; MAGAZINES FOR
WATCH COLLECTORS, IN CLASS 16 (U.S. CLS.
2, 5, 22, 23, 29, 37, 38 AND 50).

OWNER OF SWITZERLAND REG. NO.
402626, DATED 12–3–1992, EXPIRES 12–3–2012.

OWNER OF U.S. REG. NO. 1,252,863 AND
OTHERS.

SER. NO. 74–641,474, FILED 3–6–1995.

JERI J. FICKES, EXAMINING ATTORNEY

Int. Cl.: **14**

Prior U.S. Cls.: **2, 27, 28 and 50**

## United States Patent and Trademark Office

Reg. No. 1,942,870
Registered Dec. 19, 1995

### TRADEMARK
### PRINCIPAL REGISTER



SWATCH AG (SWATCH SA) (SWATCH LTD.)
(SWITZERLAND CORPORATION)
94, RUE JAKOB STAMPFLI
2500 BIENNE, SWITZERLAND

FOR: WATCHES AND THEIR PARTS, IN CLASS 14 (U.S. CLS. 2, 27, 28 AND 50).
FIRST USE 11–29–1994; IN COMMERCE 11–29–1994.

PRIORITY CLAIMED UNDER SEC. 44(D) ON SWITZERLAND APPLICATION NO. 5835.1994.I, FILED 8–26–1994, REG. NO. 413479, DATED 8–26–1994, EXPIRES 8–26–2004.

SER. NO. 74–628,211, FILED 2–1–1995.

JERI J. FICKES, EXAMINING ATTORNEY

Int. Cls.: **6, 9, 16, 18, 20 and 28**

Prior U.S. Cls.: **2, 3, 5, 12, 13, 14, 21, 22, 23, 25, 26, 29, 32, 36, 37, 38 and 50**

Reg. No. 2,100,605

## United States Patent and Trademark Office

Registered Sep. 30, 1997

## TRADEMARK
### PRINCIPAL REGISTER

## SWATCH

SWATCH AG (SWATCH SA) (SWATCH LTD.) (SWITZERLAND CORPORATION)
94 RUE JAKOB STAMPFLI
BIENNE, SWITZERLAND

FOR: METAL KEYCHAINS, IN CLASS 6 (U.S. CLS. 2, 12, 13, 14, 23, 25 AND 50).

FOR: OPTICAL SPECTACLES AND SUNGLASSES, FRAMES FOR SPECTACLES, CASES FOR SPECTACLES, SPECTACLE RETAINING CORDS AND SPECTACLE RETAINING CHAINS, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FOR: PENS, PENCILS, AND MARKERS, IN CLASS 16 (U.S. CLS. 2, 5, 22, 23, 29, 37, 38 AND 50).

FOR: SUITCASES, TRAVEL BAGS, COSMETIC CASES (SOLD EMPTY), BRIEFCASE-TYPE PORTFOLIOS, BRIEFCASES, WALLETS, HANDBAGS, KEYHOLDERS, VANITY CASES (SOLD EMPTY), UMBRELLAS, AND PARASOLS, IN CLASS 18 (U.S. CL. 3).

FOR: NON-METAL KEYHOLDERS, IN CLASS 20 (U.S. CLS. 2, 13, 22, 25, 32 AND 50).

FOR: TOYS WATCHES, BALLOONS, TOY BALLS, TOY FLYING DISKS; TOYS AND SPORTING GOODS, NAMELY GOLF BALLS, TENNIS BALLS, VOLLEY BALLS, SOCCER BALLS, FLIPPERS FOR SWIMMING, GOLF BAGS, AND CLUBS, GOLF GLOVES, ICE SKATES, ROLLER SKATES, AND IN-LINE SKATES, SKATEBOARDS, SURFBOARDS, ELBOW GUARDS AND KNEE GUARDS, IN CLASS 28 (U.S. CLS. 22, 23, 38 AND 50).

OWNER OF SWITZERLAND REG. NO. 337298, DATED 12-21-1984, EXPIRES 12-21-2004.

OWNER OF U.S. REG. NO. 1,252,863 AND OTHERS.

SER. NO. 74-579,325, FILED 9-28-1994.

JERI J. FICKES, EXAMINING ATTORNEY

Int. Cl.: 25

Prior U.S. Cl.: 39

**Reg. No. 1,980,517**

## United States Patent and Trademark Office   Registered June 18, 1996

### TRADEMARK
#### PRINCIPAL REGISTER

## SWATCH

SWATCH AG (SWATCH SA) (SWATCH LTD.) (SWITZERLAND CORPORATION)
94 RUE JAKOB STAMPFLI
BIENNE, SWITZERLAND

FOR: T-SHIRTS, NECKTIES, SCARVES AND CAPS, IN CLASS 25 (U.S. CL. 39).

FIRST USE 0-0-1986; IN COMMERCE 0-0-1986.
OWNER OF U.S. REG. NO. 1,252,863 AND OTHERS.

SER. NO. 74-578,861, FILED 9-27-1994.

JERI J. FICKES, EXAMINING ATTORNEY

Int. Cl.: 42

Prior U.S. Cl.: 101

## United States Patent and Trademark Office

Reg. No. 1,849,657
Registered Aug. 9, 1994

### SERVICE MARK
### PRINCIPAL REGISTER



SWATCH SA (SWITZERLAND CORPORA-
TION)
94, RUE JAKOB STAMPFLI
501 BIENNE, SWITZERLAND

FOR: RETAIL STORE SERVICES; NAMELY,
RETAIL SHOPS FEATURING, SUNGLASSES
AND ELECTRONICS, IN CLASS 42 (U.S. CL.
101).

FIRST USE 11–26–1993; IN COMMERCE
11–26–1993.
OWNER OF U.S. REG. NOS. 1,490,111,
1,671,076, AND OTHERS.

SN 74–248,413, FILED 2–21–1992.

SASHA CARTER, EXAMINING ATTORNEY

Int. Cl.: 14

Prior U.S. Cl.: 27

Reg. No. 1,671,076

## United States Patent and Trademark Office    Registered Jan. 7, 1992

### TRADEMARK
### PRINCIPAL REGISTER

## SWATCH

SWATCH S.A. (SWITZERLAND CORPORA-
TION)
94 RUE JAKOB STAMPFLI
BIENNE, SWITZERLAND

FOR: WATCHES, CLOCKS AND PARTS
THEREOF, IN CLASS 14 (U.S. CL. 27).

FIRST USE 11–12–1981; IN COMMERCE
11–12–1981.

SER. NO. 74–079,220, FILED 7–17–1990.

ALICE SUE CARRUTHERS, EXAMINING AT-
TORNEY

Int. Cl.: 14

Prior U.S. Cl.: 27

**United States Patent and Trademark Office**

Reg. No. 1,664,054
Registered Nov. 12, 1991

## TRADEMARK
### PRINCIPAL REGISTER

### SWATCH SCUBA 200

SWATCH SA (SWITZERLAND CORPORA-
TION)
94, RUE JAKOB STAMPFLI
BIENNE, SWITZERLAND

FOR: WATCHES, THEIR PARTS AND AC-
CESSORIES, IN CLASS 14 (U.S. CL. 27).
FIRST USE 5-9-1990; IN COMMERCE
5-9-1990.
OWNER OF SWITZERLAND REG. NO.
378412, DATED 4-12-1990, EXPIRES 4-12-2010.

OWNER OF U.S. REG. NOS. 1,252,863,
1,356,512, AND 1,435,443.
NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE "SCUBA", APART FROM THE
MARK AS SHOWN.

SER. NO. 74-051,641, FILED 4-23-1990.

ALICE SUE CARRUTHERS, EXAMINING AT-
TORNEY

**Int. Cl.: 14**

**Prior U.S. Cl.: 27**

## United States Patent and Trademark Office

Reg. No. 1,490,111
Registered May 31, 1988

### TRADEMARK
### PRINCIPAL REGISTER



SWATCH S.A. (SWITZERLAND CORPORA-
TION)
RUE JACOB STAMPFLI 94
BIENNE, SWITZERLAND

FOR: WATCHES AND WATCH BANDS,
DIALS, CASES AND PARTS THEREOF, IN
CLASS 14 (U.S. CL. 27).

FIRST USE 2–1–1985; IN COMMERCE
5–31–1985.
OWNER OF U.S. REG. NO. 1,435,443.

SER. NO. 681,174, FILED 8–28–1987.

MARK TRAPHAGEN, EXAMINING ATTOR-
NEY

Int. Cl.: 14

Prior U.S. Cl.: 27

**United States Patent and Trademark Office**

Reg. No. 1,356,512
Registered Aug. 27, 1985

## TRADEMARK
### PRINCIPAL REGISTER

# swatch

ETA S.A. FABRIQUES D'EBAUCHES (SWIT-
ZERLAND CORPORATION)
GRENCHEN, SWITZERLAND 2540

  FOR: WATCHES AND PARTS THEREOF, IN
CLASS 14 (U.S. CL. 27).
  FIRST USE 5-31-1982; IN COMMERCE
5-31-1982.

OWNER OF U.S. REG. NOS. 1,227,456 AND
1,252,863.

SER. NO. 506,848, FILED 11-2-1984.

ROBERT PEVERADA, EXAMINING ATTOR-
NEY

Int. Cl.: 14

Prior U.S. Cl.: 27

Reg. No. 1,356,512

## United States Patent and Trademark Office   Registered Aug. 27, 1985

### TRADEMARK
### PRINCIPAL REGISTER

# swatch

ETA S.A. FABRIQUES D'EBAUCHES (SWIT-
ZERLAND CORPORATION)
GRENCHEN, SWITZERLAND 2540

FOR: WATCHES AND PARTS THEREOF, IN
CLASS 14 (U.S. CL. 27).
FIRST USE 5-31-1982; IN COMMERCE
5-31-1982.

OWNER OF U.S. REG. NOS. 1,227,456 AND
1,252,863.

SER. NO. 506,848, FILED 11-2-1984.

ROBERT PEVERADA, EXAMINING ATTOR-
NEY

EXHIBIT 83

**U.S. District Court**
**EASTERN DISTRICT OF NORTH CAROLINA (Eastern Division)**
**CIVIL DOCKET FOR CASE #: 4:09-cv-00204-D**

The Mainstreet Collection, Inc. v. Beehive Wholesale, LLC
Assigned to: Judge James C. Dever, III
Cause: 15:44 Trademark Infringement

Date Filed: 11/24/2009
Jury Demand: Plaintiff
Nature of Suit: 840 Trademark
Jurisdiction: Federal Question

**Plaintiff**

**The Mainstreet Collection, Inc.**

represented by **Anthony J. Biller**
Coats & Bennett, PLLC
1400 Crescent Green, Suite 300
Cary , NC 27511
919-854-1844
Fax: 919-854-2084
Email: abiller@coatsandbennett.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Beehive Wholesale, LLC**

| Date Filed | # | Docket Text |
|---|---|---|
| 11/24/2009 | 1 | COMPLAINT against Beehive Wholesale, LLC ( Filing fee $ 350 receipt number 04170000000001036606.), filed by The Mainstreet Collection, Inc.. (Attachments: # 1 Civil Cover Sheet, # 2 Supplement Civil Summons to Beehive Wholesale LLC) (Biller, Anthony) (Entered: 11/24/2009) |
| 11/24/2009 | 2 | FINANCIAL DISCLOSURE STATEMENT by The Mainstreet Collection, Inc.. (Biller, Anthony) (Entered: 11/24/2009) |
| 11/25/2009 | | Case Selected for Mediation - A printable list of certified mediators for the Eastern District of North Carolina is available on the court's Website, http://www.nced.uscourts.gov/applications/mediators.asp. Please serve this list on all parties. (Beasley, B.) (Entered: 11/25/2009) |
| 11/30/2009 | 3 | Summons Issued as to Beehive Wholesale, LLC. Counsel should print summons to effect service. (Mears, C.) (Entered: 11/30/2009) |

| PACER Service Center |
|---|
| Transaction Receipt |

12/28/2009 20:40:43

| PACER Login: | ci2017 | Client Code: | 98885 |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 4:09-cv-00204-D |
| Billable Pages: | 1 | Cost: | 0.08 |

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

| | | |
|---|---|---|
| THE MAINSTREETCOLLECTION, INC. | ) ) ) | |
| Plaintiff, | ) ) | COMPLAINT |
| v. | ) ) | |
| BEEHIVE WHOLESALE, LLC, | ) ) | |
| Defendant. | ) | |

Plaintiff The Mainstreet Collection, Inc.("Mainstreet") by and through its counsel,

complaining of Defendant Beehive Wholesale, LLC ("Beehive") alleges and says:

## PARTIES

1.     Mainstreet is a North Carolina corporation with its principal place of business in

Washington, North Carolina.

2.     Beehive is a Louisiana LLC with its principal place of business in Ruston, LA

and, upon information and belief, the members of Beehive Wholesale LLC are citizens of

Louisiana.

## JURISDICTION AND VENUE

3.     This is an action for trade dress infringement, false designation of origin and

unfair competition, arising under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*., the North Carolina

Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq*., and common law

trade dress infringement.  This Court has jurisdiction over the subject matter of this action

pursuant to 28 U.S.C. §§ 1331, 1338 and 1367.

4.     Upon information and belief, Beehive regularly engages in business in this

judicial district and markets and sells its infringing products in this judicial district.

5.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391.

## MAINSTREET AND ITS DISTINCTIVE
## HIGH CONTRAST, POLKA DOT MONOGRAM TRADE DRESS

6.      Over the past decade, Mainstreet and its founder, Ms. Tracy Mayo, have built one

of the most successful gift product companies in the United States.  Mainstreet's product line

includes gifts, crafts, kitchenware and other accessories.

7.      Mainstreet markets and sells its products nationwide through nationally

recognized retailers.  The retailers in turn market and sell Mainstreet's products through retail

stores, over the Internet, and through direct mail catalogues.

8.      In 2008, Mainstreet's sales to retailers skyrocketed from millions of dollars per

year to tens of millions of dollars in revenues.  Underlying Mainstreet's success was and is a new

and highly distinctive line of products that Mainstreet introduced to the market in November

2007.  As shown below, these products feature a high contrast polka dot design, typically with

contrasting, fluorescent monograms in the distinctive Curlz font:



9.      Among other things, the Mainstreet trade dress consists of, but is not limited to,

(1) closely and symmetrically arranged, white polka dots on a background of either black, hot

2

pink, or lime green color, the background often consisting of Moire fabric, and (2) a single, capital letter monogram in Curlz font, colored either lime green, hot pink, or black embroidered on and contrasting with the underlying color.

10.     Mainstreet's high contrast, polka dot monogram trade dress is non-functional, as demonstrated by the number of third-party monogram gift products that have alternative packaging and product designs and color schemes.

11.     Mainstreet's high contrast, fluorescent monogram polka dot trade dress is inherently distinctive.  It was unique, elegant, and new to the gift industry, and as a result, it was an overnight commercial success.

12.     Since introducing its high contrast, polka dot monogram gift products, Mainstreet's sales have rapidly increased, with the majority of sales coming from its high contrast, polka dot monogram product line.  Specifically, since introducing its distinctive trade dress, Mainstreet has generated over $30 million in sales.  Prior to Mainstreet's introduction of its high contrast, polka dot monogram product line, it conducted sales of approximately $5 million per year; now, Mainstreet's annual sales are over $17 million per year and are likely to soon be over $20 million a year.

13.     Since November 2007, Mainstreet has spent approximately $300,000 in advertising, catalogues, and marketing.  Most of Mainstreet's marketing, catalogues, and advertising show and highlight its distinctive and popular high contrast, polka dot monogram products.

14.     In 2008, the leading national retailer of gift items, Hallmark®, began purchasing Mainstreet's high contrast, polka dot monogram product line and now includes those products in its Hallmark® stores nationwide.

3

15.     Approximately 6,000 retail stores across the United States sell Mainstreet's distinctive polka dot monogram product line.

16.     Over one hundred Internet websites market Mainstreet's products and feature its distinctive trade dress, to include the following representative examples:



(http://www.merrybelles.com/macopodotnow.html)



(http://thepinkchalet.com/category_49/Mainstreet-Collection.htm)

17.     Mainstreet also markets its products to retailers through a secure and password protected website at www.gowhimsey.com.  Although access to the Mainstreet website is limited to retailers, since it began tracking users in mid-August 2009, the site has generated over 76,100 views through November 23, 2009.  MSC's online catalogue at Active Merchandiser's website generated over 931,000 page views over the same period.

18.     Mainstreet maintains two permanent corporate showrooms that prominently display Mainstreet's high contrast polka dot trade dress through both the actual merchandise and the showroom décor.  Presently, Mainstreet has 5,000 square feet of showroom space at the AmericasMart® Atlanta market center, the largest wholesale gift market of its kind.  Mainstreet's

5

corporate showroom at AmericasMart® Atlanta won the coveted "Best of Floor" award in July 2009. As depicted below, Mainstreet's showrooms prominently display Mainstreet's distinctive, polka dot monogram trade dress:







Front of Showroom

Mainstreet maintains a second permanent showroom at the Dallas Market Center, the second largest wholesale gift marketplace. Presently, Mainstreet's Dallas showroom spans 2,800 feet and is depicted below:

 

19.     Mainstreet participates in the market trade shows hosted by the campuses housing

its showrooms in the AmericasMart® Atlanta and Dallas Market Center.  AmericasMart® Atlanta

hosts major trade shows in January and July of each year, and mini shows in March and

September.  Dallas Market Center hosts major shows in January and June, and mini shows in

March and September.  Tens of thousands of retailers attend each market show in Dallas and

Atlanta and witness Mainstreet's trade dress prominently displayed both in its showroom and

throughout the trade show campuses.  Mainstreet spends significant time and money to promote

its brand and products during these national trade shows, including:

    a.  Developing large advertisements for Mainstreet's products that span walls, climb

        pillars, and frame doors throughout the marketplace.  These advertisements

        incorporate Mainstreet's high contrast polka dot line through the products

        showcased in the advertisements, as well as in the artwork on the advertisements.

        Examples of Mainstreet's trade show advertising include:

7



b.  Participating in television interviews from Mainstreet's corporate showrooms.  At
past trade shows, television stations from Atlanta, New York, and Dallas
produced television segments about Mainstreet.  Mainstreet's most recent
television segment occurred in Dallas in June 2009.

c.  Hosting a cocktail hour with live entertainment as part of the showroom grand
opening festivities at the last markets.

d.  Displaying its signature high contrast polka dot monogram merchandise.

Mainstreet's efforts in promotion during trade shows resulted in millions of dollars at wholesale
from the most recent trade shows.

20.     Prominent trade show publications feature Mainstreet's line of high polka dot
monogram products in their trade show publications.  These industry publications are sent to
thousands of retailers.  *The Market Magazine*, AmericasMart® Atlanta's premier catalogue,
features Mainstreet's monogram catalogue.  Nearly all the items displayed in the monogram
catalogue feature Mainstreet's high contrast polka dot trade dress.  One hundred twenty five
thousand (125,000) retailers received a copy of *The Market Magazine*.  Mainstreet also places a

8

full page advertisement in *The Source*, the Dallas Market's trade publication that is mailed to 50,000 retailers. Mainstreet's high contrast polka dot line of products is prominently displayed in these advertisements.

21.     Mainstreet's high contrast, polka dot monogram products are also featured in Palmer Marketing's premier catalogue *Idea Book*. In October 2008, Palmer distributed six million copies of *Idea Book* with Mainstreet's distinctive product line to consumers nationwide. In addition to *Idea Book*, Palmer Marketing creates catalogs for retail stores and allows wholesalers from its *Idea Book* to include insert pages in those retail store catalogues. Mainstreet's inserts featuring its distinctive product line reached 758,000 consumers in Spring 2009; 659,000 consumers in Winter 2008; and 600,000 consumers in Winter 2009. These inserts also showcased Mainstreet's high contrast polka dot products.

22.     Since the introduction of Mainstreet's high contrast, polka dot monogram line of products, the leading gift industry trade publication ranks Mainstreet at or near the top of its categories nationwide. *Gift Beat*, the gift industry's premier rankings newsletter, now ranks Mainstreet among the top gift and product companies in the nation. The rankings and accolades *Gift Beat* has awarded to Mainstreet include:

   a.   In August 2009, Mainstreet topped *Gift Beat's* national charts, placing first for monogrammed gifts.

   b.   In February 2009, *Gift Beat* awarded Mainstreet high accolades for personalized gifts, ranking Mainstreet second in the nation, first in the South, second in the Midwest, and fourth in the northeast.

   c.   In September of 2008, *Gift Beat* ranked Mainstreet number two in the nation for personalized gifts.

d.   *Gift Beat* ranked Mainstreet sixth in the nation for highest markups, ninth in the nation for reorders, and ninth in the nation for fashion accessories in September 2009.

e.   *Gift Beat* ranked Mainstreet fourth in the nation for girl themed gifts and awarded it an honorable mention for graduations gifts in July 2009.

f.   *Gift Beat* ranked Mainstreet third in the South and seventh in the nation for stationary accessories, fourth in the South and eight nationally for reorders, and fifth in the nation for friendship gifts in May 2009.

g.   In June 2006, Mainstreet placed third in the South and seventh in the nation for gifts costing five dollars ($5) or less.  *Gift Beat* also awarded MSC honorable mentions for glassware gifts and functional gifts.

h.   March 2009, *Gift Beat* ranked Mainstreet eighth in the nation for teen/tween gifts.

i.   In October 2009, Mainstreet placed fourth in the South for wine-themed gifts, and fifth in the South for fabric-themed gifts.  Mainstreet earned honorable mentions on *Gift Beat*'s national charts for steady sellers, tabletop/accessories, fabric-themed gifts, and wine-themed gifts.

j.   In August 2008, *Gift Beat* ranked Mainstreet third in the south for summer/seasonal gifts, a category in which it won an honorable mention nationally.

23.   In the past two years, Mainstreet has sold tens of millions of dollars worth of product bearing its high contrast, polka dot monogram trade dress, and has invested hundreds of thousands of dollars and countless hours advertising, marketing and promoting its high contrast, polka dot monogram trade dress.  As a result of such investments of time, effort, and resources in

10

the development of its distinctive and well known trade dress designs, Mainstreet's trade dress

has acquired secondary meaning amongst consumers and is widely recognized as emanating

from a single source and reflective of the highest quality standards.  Mainstreet has accordingly

built up substantial goodwill and selling power in its high contrast, polka dot monogram trade

dress, and this trade dress has become an asset of tremendous value.

24.     Mainstreet's high contrast, polka dot monogram trade dress is inherently

distinctive, non-functional, and is well known and exclusively identified in the minds of the

relevant public with monogram gift items made and sold by a single source.

<strong>BEEHIVE'S WRONGFUL ACTS</strong>

25.     Beehive is a Louisiana entity that directly competes with Mainstreet and its retail

customers.  Beehive operates retail stores where, upon information and belief, it sells the accused

products, maintains a website to sell its wholesale products at http://www.beehivewholesale.com.

and also shows its products at the same trade shows as Mainstreet: AmericasMart® Atlanta and

Dallas Market Center.

26.     During 2008, Beehive purchased products at wholesale from Mainstreet, to

include thousands of dollars worth of products bearing Mainstreet's distinctive high contrast,

polka dot monogram trade dress.

27.     Mainstreet's products were very popular with Beehive's customers, and Beehive

prominently placed Mainstreet's products in its retail stores so that Mainstreet products were one

of the first things their customers saw upon entering the Beehive stores.  Mainstreet's products

sold rapidly.

28.     In February 2009, Mainstreet discontinued selling to Beehive based on concerns

that Beehive was or would be copying Mainstreet products.

11

29.    On or about November 13, 2009, Beehive distributed an email solicitation in which Beehive advertises at wholesale prices, products flagrantly copying Mainstreet's distinctive, high contrast, polka dot monogram and trade dress.  The email was distributed into North Carolina and, upon information and belief, was distributed nationwide.  A copy of Beehive's email advertisement is shown below.



30.     Mainstreet visited Beehive's website and learned that Beehive markets and sells numerous products that flagrantly copy Mainstreet's distinctive high contrast, polka dot monogram trade dress.  Examples of Beehive's infringing products include, but are not limited to:

a.   Beehive's "Black Dot Collection" portfolio, flat wallet, and small notepad;



b.   Beehive's "Green Dot Collection" coin purse, flat wallet, and photo wallet; and



c.   Beehive's "Pink Dot Collection" portfolio, coin purse, and make-up bag



31.    On November 23, 2009, Mainstreet discovered that Beehive is marketing Mainstreet's trade dress on the front page of Beehive's website, using the same image as was distributed in the aforementioned email advertisement, as follows:



32.    Beehive slavishly copies Mainstreet's distinctive high contrast, polka dot monogram trade dress and offers it on numerous products that directly compete with the products Mainstreet offers.  Beehive simply counterfeited Mainstreet's distinctive, well known, and highly successful product line.

33.    Beehive's "Black Dot Line" slavishly copies the salient features of Mainstreet's high contrast, black with white polka dot monogram trade dress.  With regard to these products, Beehive:

    a.  Copies using black fabric with white polka-dots for the exterior covers of the products;

    b.  Upon information and belief, uses the same Moire fabric for the exterior cover;

    c.  Upon information and belief, uses the same sized dots at the same relative locations;

    d.  Copies the same fluorescent monogram coloring: lime green and hot pink;

e.   Uses the identical Curlz font for each monogram;

f.   Upon information and belief, copies the identical size, position, and boldness for each monogram; and

g.   Upon information and belief, uses the same denier thread for each monogram.

34.   Beehive's "Green Dot Line" slavishly copies the salient features of Mainstreet's high contrast, green with white polka dot monogram trade dress.   With regard to these products, Beehive:

a.   Copies using green fabric with white polka-dots for the exterior covers of the products;

b.   Upon information and belief, uses identical Moire fabric for the exterior cover;

c.   Upon information and belief, uses the same sized dots at the same relative locations;

d.   Copies the same fluorescent monogram coloring: hot pink;

e.   Uses the identical Curlz font for each monogram;

f.   Upon information and belief, copies the identical size, position, and boldness for each monogram; and

g.   Upon information and belief, uses the same denier thread for each monogram.

35.   Beehive's "Pink Dot Line" slavishly copies the salient features of Mainstreet's high contrast, pink with white polka dot monogram trade dress.   With regard to these products, Beehive:

a.   Copies using pink fabric with white polka-dots for the exterior covers of the products;

b.   Upon information and belief, uses identical Moire fabric for the exterior cover;

    c.  Upon information and belief, uses the same sized dots at the same relative

        locations;

    d.  Copies the same fluorescent monogram coloring: lime green;

    e.  Uses the identical Curlz font for each monogram;

    f.  Upon information and belief, copies the identical size, position, and boldness for

        each monogram; and

    g.  Upon information and belief, used the same denier thread for each monogram.

36.     To the ordinary observer, Beehive is marketing and selling identical copies of

Mainstreet's high contrast, pink with white polka dot monogram products, Mainstreet's high

contrast, green with white polka dots monogram products, and Mainstreet's high contrast, black

with white polka dots monogram products.

37.     Mainstreet recognized that many of the products Beehive offers are products

Mainstreet advertised in its monogram catalogue that was distributed by *The Market Magazine*.

For example:

    a.  Mainstreet advertised its portfolios with its distinctive, high contrast, polka dot

        monogram trade dress in its monogram catalogue (below left).  Beehive now

        offers portfolios that incorporate Mainstreet's trade dress (below right).

                      

Mainstreet Portfolios                Beehive Portfolios

b.  Mainstreet advertised its flat wallets with its distinctive, high contrast, polka dot

monogram trade dress in its monogram catalogue (below left).  Beehive now

offers flat wallets that incorporate Mainstreet's trade dress (below right).

 

c.  Mainstreet advertised its koozies with its distinctive high contrast, polka dot trade

dress in its monogram catalogue (below left).  Beehive now offers koozies that

incorporate Mainstreet's trade dress (below right).

 

d.  Mainstreet advertised its coin purses incorporating its distinctive, high contrast,

polka dot monogram trade dress in its monogram catalogue (below left).  Beehive

now offers coin purses incorporating Mainstreet's distinctive trade dress (below

right).

 

38.    Beehive was aware of Mainstreet's high contrast, polka dot monogram product line prior to marketing and selling its accused portfolio.

39.    Upon information and belief, Beehive attended the 2009 trade shows at AmericasMart® Atlanta.  Like every attendee of the 2009 trade shows at AmericasMart® Atlanta, Beehive received a copy of Mainstreet's monogram catalogue with Beehive's copy of *The Market Magazine*.

40.    Beehive purposefully copied Mainstreet's trade dress and product offerings to directly compete against Mainstreet.

41.    Undoubtedly, Beehive's counterfeit product confuses the ultimate purchasers and consumers of Mainstreet's products into believing that Beehive's product originates from, is associated with, or is otherwise approved by Mainstreet.  This consumer confusion unfairly benefits Beehive and irreparably harms Mainstreet.

42.    Upon information and belief, with full knowledge of Mainstreet's high contrast, polka dot monogram trade dress, Beehive purposefully and intentionally copied Mainstreet's trade dress to capitalize on the valuable goodwill and recognition established by Mainstreet's marketplace success in the monogram gift industry.

43.    The parties' respective products are sold through retail outlets that often times compete in the same geographic marketplaces for the same consumers.  The parties' respective products are also marketed and sold to the same wholesalers, to include at the same trade shows, namely AmericasMart® Atlanta and the Dallas Market Center.

44.    Beehive's use of Mainstreet's high contrast, polka dot monogram trade dress in connection with the sale of monogram gift items has caused consumer confusion and irreparable

18

damage to Mainstreet and, if not enjoined, will continue to cause consumer confusion and irreparable injury to Mainstreet, its retailers, and to the consuming public.

**COUNT I**
**UNFAIR COMPETITION**
**15 USC § 1125(a) & NC Common Law**

45.     Mainstreet repeats and realleges, as if fully set forth herein, each and every allegation contained in the foregoing paragraphs.

46.     Beehive's actions have caused and are likely to continue causing confusion, mistake, and deception as to the origin, sponsorship, or approval of Beehive's high contrast, polka dot monogram products, and thus constitute trade dress infringement, false designation of origin, passing off, and unfair competition with respect to the distinctive look and feel of the Mainstreet high contrast, polka dot monogram trade dress, all in violation of § 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), and North Carolina common law.

47.     Mainstreet's trade dress is valid and enforceable, not functional and inherently distinctive and has attained secondary meaning such that consumers identify it as originating from a single source.

48.     On information and belief, Beehive's copying has been deliberate, willful, intentional and in bad faith, with disregard of Mainstreet's rights and with intent to deceive or to create mistake or confusion in the minds of Mainstreet's customers and of the public generally, including the relevant public in North Carolina.

49.     Beehive's wrongful conduct has permitted or will continue to permit Beehive to earn substantial revenues and profits on the strength of Mainstreet's extensive advertising, consumer recognition, and goodwill.

19

50.     The goodwill of Mainstreet's business is of enormous value, and as a result of Beehive's acts as alleged herein, Mainstreet has suffered and will continue to suffer irreparable harm should Beehive's unfair competition be allowed to continue to the detriment of Mainstreet's trade, reputation and good will.

51.     Mainstreet cannot be adequately compensated for these injuries by damages alone, and Mainstreet has no adequate remedy at law for Beehive's infringement of its rights. Mainstreet is entitled to injunctive relief, as well as enhanced damages and attorneys' fees.

**COUNT II**
**N.C. GEN. STAT. § 75-1.1**

52.     Mainstreet repeats and realleges, as if fully set forth herein, each and every allegation contained in the foregoing paragraphs.

53.     Beehive is trading upon Mainstreet's goodwill and reputation and passing off Beehive's goods and services as affiliated with Mainstreet, and Beehive's use of the Mainstreet trade dress has caused and is likely to continue causing confusion, mistake, and deception as to the affiliation, connection, or association of Beehive with Mainstreet, or as to the origin, sponsorship, or approval of Beehive's goods and services or commercial activities by Mainstreet.

54.     Beehive's conduct constitutes unfair or deceptive acts, practices, and methods of competition in violation of N.C. Gen. Stat. § 75-1.1(a).

55.     Beehive's passing off has a tendency to deceive and is unfair because it offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers within the State of North Carolina.

56.     On information and belief, Beehive's conduct has been deliberate, willful, intentional and in bad faith.

57.     Beehive's wrongful conduct has caused Mainstreet to suffer and, absent intervention of the Court, will cause Mainstreet to continue to suffer actual damages and damage to its business, reputation, and goodwill.

58.     Beehive's wrongful conduct has caused Mainstreet to suffer and, absent intervention of the Court, will cause Mainstreet to continue to suffer irreparable harm for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE Mainstreet respectfully prays the Court to:

(a)     issue preliminary and permanent injunctive relief, enjoining Beehive, and its agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Beehive, from: (1) reproducing, distributing, displaying or creating any copies or derivative works of any products or product packaging that are substantially similar to Mainstreet's trade dress; (2) using any advertising or promotional material referencing Mainstreet or its trade dress; (3) using any of Mainstreet's trade dress, including without limitation hot pink, lime green, white and black polka dot, with monograms in Curlz font, or any confusingly similar designs, colors, symbols, or combinations thereof in connection with the sale of Beehive's goods; (4) using any other designation which is confusingly similar to Mainstreet's trade dress or that is likely to create the impression that Beehive's business or services are associated with Mainstreet or are endorsed, authorized, or sponsored by Mainstreet; (5) engaging in unfair competition by infringing, misappropriating, or diluting Mainstreet's trade dress; (6) advertising or representing, directly or

indirectly, that Beehive is in any way affiliated with Mainstreet; (7) engaging in any actions in which Beehive holds itself out as having any association with Mainstreet; and (8) engaging in any other activities constituting an infringement of Mainstreet's trade dress and copyright rights;

(b)    Order Beehive to sequester, forfeit, and deliver up for destruction all infringing product in its possession, custody, or control, or in the possession, custody, or control of any of its agents or representatives, that bear Mainstreet's high contrast, polka dot monogram trade dress, or confusingly similar variations thereof;

(c)    Order Beehive to deliver up for destruction all materials in its possession, custody, or control, or in the possession, custody, or control of any of its agents or representatives, that display or show Mainstreet's high contrast, polka dot monogram trade dress, or confusingly similar variations thereof, including but not limited to signage, electronic publications, labels, catalogs, advertisements, pictures, promotional materials, and the like;

(d)    Find that Beehive's acts were willful and intentional and order Beehive to pay Mainstreet additional damages equal to three times the actual damages awarded to Mainstreet pursuant to 15 U.S.C. § 1117(a) and/or N.C. Gen. Stat. § 75-16;

(e)    Require Beehive to account to Mainstreet for its profits and the damages suffered by Mainstreet as a result of Beehive's acts alleged herein, including but not limited to an accounting by Beehive of all revenue and profits derived from its sales of goods as a result of Beehive's infringement under 15 U.S.C. § 1117, and that Mainstreet be awarded Beehive's profits as a consequence of the acts of infringement and that such award be trebled pursuant to 15 U.S.C. § 1117(a)

and/or N.C. Gen. Stat. § 75-16;

(f)     that Mainstreet be awarded punitive damages;

(g)     that this Court award Mainstreet its taxable costs and disbursements in this action

pursuant to 15 U.S.C. §1117;

(h)     Award pre-judgment and post-judgment interest as allowed by law;

(i)     Award Mainstreet its reasonable attorneys' fees and expenses pursuant to 15

U.S.C. § 1117, N.C. Gen. Stat. § 75-16.1 and/or North Carolina common law; and

(j)     that Mainstreet be afforded such other relief to which it is entitled pursuant to the

Lanham Act, the North Carolina Unfair and Deceptive Trade Practices Act, North

Carolina common law, and as this Court deems just and equitable.

**MAINSTREET DEMANDS A TRIAL BY JURY**

**COATS & BENNETT, P.L.L.C.**
**Attorneys for Mainstreet Collections, Inc.**

/s/ Anthony J. Biller
N. C. State Bar No.: 25,117
abiller@coatsandbennett.com
Emily M. Haas
N.C. State Bar No.: 39,716
ehaas@coatsandbennett.com
1400 Crescent Green, Suite 300
Cary, North Carolina 27518
Telephone: (919) 854-1844
Facsimile: (919) 854-2084

℧JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

THE MAINSTREET COLLECTION, INC.

## DEFENDANTS

BEEHIVE WHOLESALE, LLC

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Coats & Bennett, PLLC, 1400 Crescent Green, Suite 300
Cary, NC 27518 (919) 854-1844

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☒ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | ☐ 871 IRS  Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 463 Habeas Corpus - Alien Detainee | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. Sections 1051, et seq

Brief description of cause:
Trade dress infringement, false designation of origin, & unfair competition

## VII. REQUESTED IN COMPLAINT:

- ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE  11/24/2009

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

AO 440 (Rev. 02/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of North Carolina

| | | |
|---|---|---|
| THE MAINSTREET COLLECTION, INC. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. |
| BEEHIVE WHOLESALE, LLC | ) | |
| *Defendant* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Beehive Wholesale, LLC
c/o Brent Bernard, Registered Agent
1901 North Service Rd. East
Ruston LA 71270

A lawsuit has been filed against you.

Within 20 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Anthony J. Biller
Coats & Bennett, PLLC
1400 Crescent Green, Suite 300
Cary, NC 27518
Telephone: (919) 854-1844
Facsimile: (919) 854-2084
E-mail: abiller@coatsandbennett.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*DENNIS P. IAVARONE, CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 02/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4(l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏  I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏  I returned the summons unexecuted because _____ ; or

❏  Other *(specify):*

My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00          .

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                                                    *Server's signature*

                                                _____
                                                                    *Printed name and title*

                                                _____
                                                                    *Server's address*

Additional information regarding attempted service, etc:

EXHIBIT 84

REDACTED

EXHIBIT 85

REDACTED

EXHIBIT 86

REDACTED

# Exhibit 87

REDACTED

# EXHIBIT 88

REDACTED

# EXHIBIT 89

REDACTED

# EXHIBIT 90

REDACTED

# EXHIBIT 91

REDACTED

# EXHIBIT 92

Feedback

Register Domains

Not Active

# Domain Details

Save BIG on websites, domain names and more.

New!
Mobile
Domain
Manageme
nt See More
...

Great news! The new DNS Manager is live.

All Domains    BIZ-TOFBE   GO

Advanced View     Quick View     Diagnostic View

Organize  Locking   Cash in   Upgrade  Renew  Forward  Contact  Nameservers  Account Chang  Delete  Selects

## Domain Information

**Registered:** 2/21/2008

**Locked:** Locked                                                  Manage

**Expires On:** 5/30/2014                                           Renew Now
                                                                    Correct Date Now!

**Auto Renew:** On                                                  Manage
**Extended Auto Renew:** Off                                        Get Extended Auto-Renew!
**Status:** Active                                                  Refresh Page
**Authorization Code:**                                             Send by Email
**Forwarding:** Off

                                                                    Manage

**Domain Enhancements**
**Privacy:** Off                                    Learn More/Add
**Domain Ownership Protection:** Off                Learn More/Add
**Certified Domain:** No certification.             Learn More/Add
**Domain Appraisals:** No appraisals.               Learn More/Add
**Premium Listings:** No Premium Listings.          Learn More/Add
**CashParking:** Disabled                           Learn More/Add
**Business Registration:** Off                      Learn More/Add
**Related Products**
**Hosting:** Not hosted here                        Learn More/Add
**WebSite Tonight©:** Off                           Learn More/Add
**Email Accounts:** None                            Manage
**Domain Starter Page:** No starter page.           Manage
**Domain Variations Bundle:** Options available Learn More/Add
**Nameservers**
**Nameservers:** (Last Update 10/14/2009)
DNS01.BTG-LLC.COM                                   Set Nameservers
DNS02.BTG-LLC.COM                                   Manage DS Records

B000738

DNS Manager
DNS Manager: (Not hosted here)
TLD Specific
Not Applicable

## Contacts (edit all)

| Registrant (edit) | Administrative (edit) | Technical (edit) | Billing (edit) |
|---|---|---|---|
| Amy Bernard | Amy Bernard | Amy Bernard | Amy Bernard |
| Beehive Jewelry Co. | Beehive Jewelry Co. | Beehive Jewelry Co. | Beehive Jewelry Co. |
| 1901 N Service Rd. E | 1901 N Service Rd. E | 1901 N Service Rd. E | 1901 N Service Rd. E |
| Ruston, Louisiana | Ruston, Louisiana | Ruston, Louisiana | Ruston, Louisiana |
| 71270 | 71270 | 71270 | 71270 |
| United States | United States | United States | United States |
| amy@beehivecentral.com | amy@beehivecentral.com | amy@beehivecentral.com | amy@beehivecentral.com |
| Tel +1.3182550524 | Tel +1.3182550524 | Tel +1.3182550524 | Tel +1.3182550524 |
| Fax +1.3182557068 | Fax +1.3182557068 | Fax +1.3182557068 | Fax +1.3182557068 |

B000739

# EXHIBIT 93



B001000

# EXHIBIT 94

**Utermohlen, William J.**

From:     Utermohlen, William J.
Sent:     Friday, April 29, 2011 1:34 PM
To:       'legal@etsy.com'
Subject: FW: Infringement of SWAP Mark

Further to our discussion, here are the links to the 12 items that mention SWAP (aside from the text of the webpage itself).

http://www.etsy.com/listing/37660804/hematite-gray-interchangeable-beaded

http://www.etsy.com/listing/49035165/silver-tone-watch-face-with-loops-loops

http://www.etsy.com/listing/48133862/white-10mm-faux-pearl-beaded-swap

http://www.etsy.com/listing/37660424/silvertone-and-goldtone-beaded-swap

http://www.etsy.com/listing/49038074/black-glass-interchangeable-beaded-swap

http://www.etsy.com/listing/37665604/coral-beaded-swap-bracelet-watch-band-or

http://www.etsy.com/listing/37665703/black-onyx-beaded-swap-bracelet-watch

http://www.etsy.com/listing/49035663/black-onyx-interchangeable-beaded-swap

http://www.etsy.com/listing/49037370/blue-glass-interchangeable-beaded-swap

http://www.etsy.com/listing/37655302/goldtone-geneva-square-watch-face-with

http://www.etsy.com/listing/44530619/red-turquoise-and-white-coral

http://www.etsy.com/listing/55265741/white-interchangeable-swap-bracelet

From: legal@etsy.com [mailto:legal@etsy.com]
Sent: Friday, April 29, 2011 11:56 AM
To: Utermohlen, William J.
Subject: Re: Infringement of SWAP Mark

Please reply above this line

Please see our response below...
Case #: 10048

**Jason Seger**
APR 29, 2011 | 03:56PM UTC

Hi William

Thanks for getting back to us so quickly.

I greatly appreciate your client's concern. The letter seems to be regarding an intellectual property issue with a user party or user-generated content. Please understand that Etsy is comprised of individual sellers who post listings to s you provided is an individual storefront or Etsy shop page. In order to be sure we're removing the correct infringing n which listings are of concern. A link or listing ID to each item that is infringing is sufficient.

- Identification of the material that is claimed to be infringing upon the intellectual property. Include information regar material with sufficient detail so that Etsy is capable of finding and verifying its existence (for listings, please provide

**CONFIDENTIAL**

B001016

Yours Truly,
Jason
Legal Support

**William J.**
APR 29, 2011 | 03:42PM UTC

Dear Mr. Seger:

We did comply with your policy by identifying the relevant webpage in
our letter. Your response appears to be a form letter. so it is not
clear to us what you are asking us to do that we have not done. Please
confirm that you have read our letter. The issue is with your website.
not the product, as is stated in our letter.

Sincerely,

William J. Utermohlen

**Jason Seger**
APR 29, 2011 | 03:34PM UTC

Dear Mr. Otermohlen

I am in receipt of a correspondence to Etsy dated 04/29/2011 regarding an intellectual property issue with one or more users of Etsy's service
posting third party or user-generated content. Please note that Etsy is a venue to buy and sell all things handmade. Etsy is not a juried site.

Etsy takes intellectual property rights seriously and I need to ask that you provide Etsy with additional information pursuant Etsy's Copyright and
Intellectual Property Policy (the "Policy"). Specifically, we need links or listings ID's to the material infringing the intellectual property, per our notice
requirement:

# Identification of the material that is claimed to be infringing upon the intellectual property. Include information regarding the location of the infringing
material with sufficient detail so that Etsy is capable of finding and verifying its existence (for listings, please provide item numbers);

The Policy and the notice requirements are found at http://www.etsy.com/policy/ip. Once we receive proper notice, Etsy will comply with our policy.

You can also contact the other party via Etsy's Conversation (or "Convo") feature. To "Convo" a member, first Sign In to Etsy. (To create an Etsy
account, you only need a username, a valid email address, and a password.) Once you've signed in, go to username.etsy.com. Once you're in the
user's Etsy page, find the CONTACT link on the left under Shop Owner. More information about Conversations:
http://help.etsy.com/app/answers/detail/a_id/71/kw/conversations

Sometimes a matter is better resolved between the parties. However, as I stated above, Etsy will comply with our Policy when given proper notice.

If you have any questions, feel free to contact me.

Very truly yours,

Jason
Legal Support

**William J.**
APR 29, 2011 | 03:13PM UTC
Original message

Re: Infringement of SWAP Mark

Dear Sir or Madam:

We enclose a letter regarding the above matter.

7/6/2011                          **CONFIDENTIAL**                          B001017

Sincerely,

William J. Utermohlen
<<etsy0429.pdf>>

This email (and any attachments) is for the sole use of the intended recipients, and may contain information that is privileged, confidential or otherwise protected from disclosure. If you are not an intended recipient, (i) you may not read, copy, distribute, or use this email, any attachment, or any information contained therein; and (ii) please immediately notify us by return e-mail, and destroy all paper and electronic copies.

Because email communications may not be received, if you send us important or time sensitive communications by e-mail, please also send a copy by facsimile and/or otherwise confirm receipt.

Oliff & Berridge, PLC, 277 S. Washington St., Suite 500, Alexandria, Virginia 22314, (703) 836-6400, email@oliff.com

This message is a private conversation between you and Etsy. Please respect this confidentiality and refrain from distributing this communication without permission from Etsy. If you feel this message was sent to you in error, please delete it and let us know. Thank you.

Support powered by Assistly

[[184feab0e39ccefa5a47728ed9696700fda3c51e-3653303]]

**CONFIDENTIAL**

B001018

# EXHIBIT 95

Etsy

- Buy
- Sell
- Community
  - Community
  - Events
  - Teams
  - Forums
- Blog

- Help

- Register
- Sign In

This Shop

- This Shop
- Handmade
- Vintage
- Supplies
- All Items
- People
- Shops

| | Search |

Cart
Close

- Register
- Sign In

Email or Username | |
Password | |
☐ Stay signed in

| Sign In |

_____

Forgot your password?

- Home >
- swapwatch's shop

001788



Thank you for visiting Swap Watch. We're glad you're here! We specialize in creating custom interchangeable watch bands for all styles and sizes. Each one of our bands is handmade and individually designed. We love creating styles for everyday wear, special occasions and everything in between... read more

- Gallery
- List

- Sort by:
- Most Recent
- Lowest Price
- Highest Price

# swapwatch

## Swap Watch

### Shop Owner



- swapwatch
  Colton, Oregon, United States
- Profile
- Favorites
- Circle
- Feedback: No feedback
- Contact

### Shop Info

- Policies
- Request custom item
- Opened on Oct 27, 2009
- 0 items for sale
- 1 sale

### Actions

- Add to favorites

http://www.etsy.com/shop/swapwatch

- See who favorites this
- Email
- Tweet
- | Like |
- Subscribe to feed
- Report this shop to Etsy

© 2011 Etsy, Inc.

- About
- Contact
- Press
- Developers
- Careers
- Terms
- Privacy
- Copyright

English (US) / $ United States Dollar / United States

001790

EXHIBIT 96

Share   Report Abuse   Next Blog»

Create Blog   Sign In

# Chronograph Canvas Watch

SELASA, 26 APRIL 2011

## Swappable Red Canvas Strap



Swappable red **canvas** strap

Diposkan oleh admin di 16:42                     0

## 0 komentar:

Citizen Men's AT0200-05E Eco-Drive C...
Citizen
Best Price $135.00
or Buy New $135.00
Buy from amazon.com
Privacy Information

Timex Unisex T49658
Expedition Class...
Timex
Best Price $28.42
or Buy New $28.42
Buy from amazon.com
Privacy Information

**PENGIKUT**

Follow
with Google Friend Connect

There are no followers yet.
Be the first!

Already a member? Sign in

**ARSIP BLOG**

▼ 2011 (34)
  ► Mei (10)
  ▼ April (24)
    Swappable Red Canvas Strap
    Citizen Men's AT0200-05E
      Eco-Drive Chronograph

001791



## Poskan Komentar

**Beri komentar sebagai:** Select profile...

Poskan Komentar    Pratinjau

Posting Lebih Baru                    Beranda                    Posting Lama

Langgan: Poskan Komentar (Atom)

Can...

Chronograph Canvas Watch.

We Sale Watches

Chronograph Canvas Watch

CHRONOGRAPH CANVAS WATCH

Chronograph Canvas Watch

CHRONOGRAPH CANVAS WATCH

18mm Zulu 2 Ring Black Nylon Watch Strap

18mm Zulu 2 Ring Military Green Nylon Watch Strap

Seiko Men's 5 Automatic Watch SNK807K2

Timex Chronograph Black Dial Men's Watch #T2N0856K...

Seiko 5 Men's SNK809 Automatic Black Strap Black ...

Timex Women's T49661 Expedition Classic Digital Ch...

Pulsar Men's PF8193 Chronograph Camo Green Strap W...

Citizen Men's BM6400-00E Eco-Drive Canvas Watch

Fossil Decker Chronograph Black Dial Watch

Casio Men's PAS400B-5V Pathfinder Forester Fishing...

Seiko Men's SNK805K2 Automatic Green Dial Green Fa...

Citizen Men's BM8475-00X Eco-Drive Military Black ...

Seiko Men's SNDA65 Chronograph Strap Watch

Citizen Men's BM8180-03E Eco-Drive Canvas Strap Wa...

Citizen Men's BL5250-02L Eco-Drive Perpetual Calen...

Citizen Men's AT0200-05E Eco-Drive Chronograph Can...

Template Simple. Didukung oleh Blogger.

001792

Case 1:11-cv-00434-LO-JFA   Document 42-11   Filed 10/28/11   Page 115 of 131 PageID# 1444

# EXHIBIT 97

Slyde HD3 watch has swappable digital watch dials for that sci-fi look | DVICE



The Syfy Online Network

AdChoices▷



@DELTAASSIST IS LISTENING AND READY TO HELP 24/7.

▶ FOLLOW @DELTAASSIST ›

△ DELTA

TOP STORIES • JUN 20 2011        TRENDING TOPICS: APPS • FASHION • LASERS



Where are 'Made for Android' earphones?



9 industrial behemoths that are probably here to destroy us



10 indisputable reasons why Captain Picard is awesome



Photos: Gorgeous 'Wing House' made from 747 plane parts



Bandi Scarab is one really dangerous-looking gaming PC



17 more Electrolux kitchen concepts that are too awesome to exist

OLED • SLYDE HD3 • WATCH

Search DVICE 

# Slyde HD3 watch has swappable digital watch dials for that sci-fi look

5

By Raymond Wong
9:16AM on Jan 24, 2011





HAUNTED COLLECTOR

New Episodes
Wednesdays 9/8c

MOST COMMENTED

Senate cancels Navy's Free Electron Laser and railgun

Japanese scientist wants you eat reconstituted poop burgers

001794



Airbus' plane of the future is a wild and crazy way to fly

**The DVICE App**



**Download for iPhone and iPad**

**Download for Android devices**

Stop whatever you're doing and look at this watch. The Slyde HD3 is the last customizable watch you'll ever need. It's a touchscreen wristwatch with swappable digital watch dials that make all those **iPod Nano watches** look like garbage.

1

Designed by Jorg Hysek Jr., the Slyde HD3 has an LED screen (OLED option a possibility too), a sapphire crystal cover, water-resistant titanium body (up to 30 meters) and a battery indicator on the side of the watch head. A fancy digital watch not enough? The Slyde HD3 also has a calendar and photo viewer. Don't see a music player in there, but most people own some sort of MP3 player anyway.

If you just take a look at the video below, your mind might be blown (mine was). The swappable digital watches look so intricate — for a digital solution, it might just work very nicely instead of forking over the cash for a **Devon Tread 1**.

**22**

Share

Prices for new digital watch dials will be cost a hefty $50 to $100. No word yet on how much the wristwatch itself will actually sell for. The Slyde HD3 comes in your silver and black. I'll take a black one please!

**Slyde HD3**, via **Acquire** and **Gizmodo**

**For the latest tech stories, follow us on Twitter at @dvice**

**Subscribe**

**Follow us**

**Become a Fan**

**Text DVICE to 72434**
Get the latest tech news on your cellphone!

**About DVICE**

**Editor:**

Kevin Hall
editor(at)dvice.com

**Senior Editor:**

Adam Frucci

**Contributing Editors:**

Evan Ackerman, Features
Raymond Wong, Reviews
Leslie Shapiro
Michael Trei
Stewart Wolpin

**International Editor:**

Adario Strange

**Comments (5)**

Comment by logging in via  Facebook  or  Twitter



**User Comments [5]**

**NT121784** on Jan 24, 2011 09:30 AM

ive got one of these, its called a phone

very cool looking though, :D ◄ Reply

**disconnected** on Jan 24, 2011 09:57 AM

thanks but i like my 10 year old swiss watch because it doesnt scratch while i climb! ◄ Reply

**Jay** on Jan 24, 2011 10:45 AM

It's still waaaay too thick. I don't think LCD watches will look even remotely stylish until they find a

way to put all the components of an LCD screen into a flexible, 2mm wafer. ◄ Reply

**namelessme** on Jan 26, 2011 12:26 AM

I have an imac from 2006 that still works better than the HP laptop I bought last year, which

incidentally has 'better' specs than my imac. ◄ Reply

**waitwhat** on Mar 01, 2011 06:40 PM

Looks cool, but not at the proposed ~$5500 price tag. I would consider a purchase around $800.

◄ Reply

Comment by logging in via **f** Facebook  or  **t** Twitter

Name

Email

Slyde HD3 watch has swappable digital watch dials for that sci-fi look | DVICE                    Page 4 of 5

Security

**DVICE CATEGORIES**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 3D Tech | Android | Announcements | Apparel | Apple | Apps | Art & Design | Buildings | Camcorders | Cameras | Car |
| Electronics | Cellphones | CES 2010 | Cloud Computing | Computer Peripherals | Downloading | DVICE TV | DVICE |
| Video | Future Tech | Galleries | Gaming | Gift Guide | Google | GPS | Green Tech | HDTV | Home Theater |
| Household | Infographics | Internet | iPhone | Kitchen | Lists | Medical | Microsoft | Military | Miscellaneous | Office |
| Outdoor | PCs | Polls | Portable Gadgets | Quizzes | Reviews | Robots | Science | Security | Software | Space |
| Tablets | Tech In-Depth | Top Stories | Toys | Vehicles | Video | Wi-Fi |

001797

Slyde HD3 watch has swappable digital watch dials for that sci-fi look | DVICE

FAQ | Feedback | Terms | Privacy | Advertising | Newsletter Signup | About DVICE

Search DVICE                    GO

©2010, DVICE. All rights reserved.

001798

# EXHIBIT 98

Welcome to Alibaba.com, Join Free | Sign In                    Buy | Sell | Commun

<< Back To Product Details

## Gps Watch Brand New



**Send your message to this supplier**

[ Enter email or Member ID ]

**Ms. Windy Wayne**

Windy Trendy Store Entr

Enter your inquiry details such as product name, color, size, MOQ, FOB, etc.

Enter between 20 to 8,000 characters.

Gps Watch Brand New Sales, Buy Gps Watch Brand New Products from alibaba.com        Page 1 of 1

Welcome to Alibaba.com, Join Free | Sign In                    Buy    Sell    Community    **My Alibaba**    My Favorites    Help

Submit Query

<< Back To Product Details

Gps Watch Brand New



**Brief Description:**

Brand New

**Windy Trendy Store Entr**
[ Malaysia ]

Contact Details

**Offline**

✉ **Contact Supplier**

Send a Message to this Supplior

---

**Send your message to this supplier**

| From: | | Enter email or Member ID |
|---|---|---|
| To: | **Ms. Windy Wayne** | |
| | Windy Trendy Store Entr | |
| Message: | Enter your inquiry details such as product name, color, size, MOQ, FOB, etc. | |

Enter between 20 to 8,000 characters.

Send

View More Related Items

---

Email this page          Bookmark this page          Print this page

---

**Company Information - Site Map - Partnerships**

Buy - Sell - My Alibaba - Community - Trade Shows - Safety & Security - Help - Contact Us

Browse by:Manufacturers - Wholesalers - China Gold Suppliers - All Products - Countries - Importers - Buying Leads - China - UK - Australia
Alibaba Group: Alibaba.com: Alibaba China - Alibaba International - AliExpress - Alibaba Japan | Taobao | Alipay | Yahoo! China | Koubei.com | Alisoft

Product Listing Policy - Intellectual Property Policy and Infringement Claims - Privacy Policy - Terms of Use
Copyright Notice © 1999-2010 Alibaba.com Hong Kong Limited and licensors. All rights reserved.

Join the Alibaba.com Research Panel

# EXHIBIT 99

Puma Swap Womens Watches

Puma Swap Womens Watches







Fast, FREE Shipping on all orders, and FREE NEXT DAY Air on orders $149 & Over details

Home | Info/Contact | Shopping Basket | Order Status | Bargain Center | Blog  Search: [          ] [Go]

No Payments! + No Interest if paid in full in 6 Months  Bill Me Later  On orders over $250. See Terms. Subject to credit approval.

**Puma Watches:**
Puma Active Watches
Puma Fashion Watches
Puma Futuristic
Puma Motorsports
Puma Sports Lifestyle

**Shop By Brand:**
Bulova Watches
Caravelle by Bulova
Charles Hubert
Citizen
Casio
Chase-Durer
ESQ Watches
Festina
Hamilton Watches
Highgear Watches
Invicta Watches
Lum-Tec Watches
Luminox Watches
Mondaine Watches
Montrek Watches
Movado Watches
National Geographic
Oakley Watches
Puma Watches
Pulsar Watches
QuadTec Watches
Reactor Watches
Reflection Bead
Watches
Seiko Watches
Seiko Clocks
Skagen Watches
Skagen Clocks
Squale Watches
Suunto
Swiss Army Watches
Swiss Army Knives &
Tools
TX TechnoLuxury
Vintage & Pre-Owned
Watch Winders
Watch Storage Cases
Wenger Watches

**Fine Swiss Watches**
Anonimo Watches
Carlo Ferrara
Chronoswiss
Dubey & Schaldenbrand
Ernst Benz Watches
Fortis Watches
Glycine Watches
Harwood Watches
Ventura Watches

**Watch Service and
Repair**

**Corporate Orders,
Engraving and Logos**

**Dads and Grads Gift
Guide**

Princeton Watches
specializes in fine
wristwatches including
chronographs, sports,
diving and dress
watches. **We are
authorized dealers for
every watch line we
sell.**



**Authorized Puma Watch Retailer - Big Inventory and Fast Shipping**

The Puma Swap Womens Watch Collection is a playful collection that features stylish
watches with interchangeable straps

You are here: Puma Watches  > Puma Swap

Click on the watches below for larger images and complete descriptions.

 **Puma Ladies Swap -
Wide Stainless Steel
Bracelet - Black Dial**
PU100082001

 **Puma Ladies Swap -
58 Crystal Bezel -
Stainless Steel
Bracelet - Silver Dial**
PU100092001

 **Puma Ladies Swap -
Black Dial - Black
Steel Case - 2
Interchangeable
Straps**
PU100102001

 **Puma Ladies Swap -
Black Dial - Rose
Gold Tone - 2
Interchangeable
Straps**
PU100112002

SHARE

**001803**

Puma Swap Womens Watches



Privacy  About Us

Copyright 2000-2011 Princeton® Enterprises, Ltd. All Rights Reserved.

6/17/2011 9:32:24 AM

h:2

**001804**

# EXHIBIT 100



help   gift cards   free catalog   wishlist   stores   womens   blog   **FREE SHIPPING OVER $75**

  (0 items) $0.00   VIEW CART   CHECKOUT   MY ACCOUNT   SIGN

**001805**

Department > Clothing >

**CLOTHING**

10   Active   Adidas   Altamon   Analog   Antihero   Ashbury   Benny   Blacksca   Brixton   Burton   Chocola   Comune   Creature   Crooks

**Collections**
Shorts & Boardshorts
Japan Relief T Shirts
T-Shirt Deal
Word on the Street
Volcom

**Men's Clothing**
New Arrivals
T-Shirts
Premium T-Shirts
Tank Tops
Button-Ups
Sweatshirts
Jackets
Miscellaneous Tops
Denim
Pants
Shorts
Boardshorts
Sale

**Youth Clothing**
T-Shirts
Jackets
Miscellaneous Tops



Like

0 Sha

**The Hundreds Swap Watch**

**$0.00**   item # 1001-95946

**Not Available**

Availability: Select a Size/Color

+ ADD TO WISHLIST   create a wishlist to share with friends and family

**PRODUCT DESCRIPTION:**

The Hundreds Swap Watch is a custom timepiece with multiple removable bands.

(CLICK TO EXPAND)

ADDITIONAL VIEWS AND DETAILS

001806

Denim
Pants
Shorts
Boardshorts
Hats
Sale

Active Denim & Pants
Footwear
Accessories
Skate
Snow
Youth
Team
The Workshop
Womens
Gift Cards

**SHIPPING & RETURNS INFO**

## GREAT CHOICES



Nike SB Stefan Janoski
Shoe White/White
**$72.99**

Active Reform Denim
**$49.99**



Nike SB Stefan Janoski
Shoe Black/Black
**$74.99**



Nike SB Eric Koston Shoe
Black/Dark Grey-Chambray
**$84.99**



Active Reform Chino Pant
**$49.99**

**RECENTLY VIEWED PRODUCTS**
No Entries

**RECENT CATEGORIES**
No Entries

**RECENT SEARCHES**
No Entries

001807





**Help**

Site Index
Help
My Account
Order Status
Shipping Info
Returns
Gift Card Balance
Email Preferences
Active Bucks

**Active Info**

Retail Stores
Online Catalog
About Active
Careers
Privacy Policy
Blog, News & Events
Contests & Giveaways
Promotions & Coupons

Live Support

RSS Feed (what is this

     

© 2000-2009 ASLU LLC. all rights reserved